# Loan Society of Philadelphia *v.* Eavenson, Appellant.

*Corporations — Directors — Mismanagement — Declarations of dividend out of capital—Over-issue of stock—Negligence—Discovery—Accounting.*

1. The directors of a corporation are required to exercise reasonable and ordinary care, skill and diligence in conducting its business and the failure to observe this standard of care imposes liability on a defaulting director.

2. Where directors of a corporation by the want of ordinary care have permitted the corporation to be defrauded by a third person and have employed a person under suspicion, in a responsible position whereby the theft of valuable property from the corporation has been made possible and have permitted the over-issuance of stock resulting in loss to the corporation, they may be required to account to the corporation for the injuries which such conduct has caused.

3. The directors of a corporation who have impaired its capital stock by declaring dividends therefrom although informed of the company's financial condition can be compelled by the corporation to reinstate the capital where the corporation is a going concern and is not in liquidation. The contention in such case that the dividends declared out of the capital were received by the stockholders and that the corporation representing the stockholders cannot claim reimbursement for that which the stockholders received is without merit, as the corporation represents only the interests of its creditors and the capital may in future be required for the payment of the corporate debts.

4. The directors of a corporation engaged in the business of loaning money on jewelry declared and paid dividends out of the capital and made large loans to a party who in collusion with the company's appraiser was permitted to defraud the company of large sums of money by depositing insufficient collateral for his loans; the appraiser was discharged under suspicion, but subsequently reappointed and stole property worth $16,000 from the company; no system was adopted for checking the collateral on deposit with the loans and cash on hand; the executive committee of the directors never met or transacted any business; the directors issued misleading statements regarding the financial condition of the company and permitted an over-issue of stock. A bill in equity was filed against the directors in

the name of the corporation for a discovery and an accounting for the losses which had resulted from their mismanagement. *Held,* the court did not err in finding that the directors had been guilty of gross negligence resulting in loss to the company, and in decreeing that they should account to the company for losses so caused.

Argued Jan. 18, 1915. Appeal, No. 211, Jan. T., 1914, by Marvin M. Eavenson, John Wills, J. W. Bowen, Charles A. Soars, Charles H. Jacobs, Henry A. Fry and Samuel Davis from decree of C. P. No. 1, Philadelphia Co., Dec. T., 1911, No. 893, requiring discovery and an accounting, in case of the Loan Society of Philadelphia, a Corporation of the State of Delaware, v. Marvin M. Eavenson, John Wills, J. Wesley Bowen, Franklin P. Dickinson, Samuel C. Mead, Charles A. Soars, S. D. Townsend, Jr., Charles H. Jacobs, Henry A. Fry, Samuel Davis, Joseph F. Cotter, Frederick B. Driver and Joseph E. Sagebeer. Before MESTREZAT, POTTER, ELKIN, MOSCHZISKER and FRAZER, JJ. Affirmed.

Bill in equity for discovery and for an accounting. Before PATTERSON, J.

The facts appear in the opinion of the Supreme Court and in Loan Society of Philadelphia v. Eavenson, 241 Pa. 65.

The court awarded the relief prayed for. Defendants appealed.

*Errors assigned* were in dismissing exceptions to various findings of the trial judge and the decree of the court.

*Charles S. Wesley* and *John G. Johnson,* with them *Frank P. Prichard* and *Tustin & Wesley,* for appellants.

*Owen J. Roberts,* of *Roberts, Montgomery & McKeehan,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, March 8, 1915:

This is a bill in equity brought by The Loan Society of Philadelphia, a corporation organized under the laws of Delaware, praying that the defendants, former directors of the corporation, be required to account to the plaintiff for losses which occurred during their directorate by reason of their fraud and gross negligence in the conduct of the business. The bill included a prayer for discovery by each of the defendants of all matters appertaining to the transaction of the society during the incumbency of the defendants as directors. The court dismissed the bill on the ground that it was without jurisdiction of the subject-matter, but on appeal to this court we reversed the decree with a procedendo: Loan Society of Philadelphia v. Eavenson, 241 Pa. 65.

We have examined carefully the ninety-four assignments of error, nearly all of which relate to the findings of fact, and we find no merit whatever in any of them. Indeed, the case turns upon questions of fact, as the law as settled by this court was applied by the learned chancellor in his disposition of the case. The elaborate briefs of counsel and the review of the evidence have not convinced us that any of the findings should be reversed. A discussion of the evidence in support of the numerous findings of the learned chancellor would serve no good purpose and unduly extend this opinion.

The bill alleges, inter alia, that the plaintiff is a corporation chartered under the laws of Delaware with authority to loan money on collateral security; that between August 31, 1908, and August 31, 1911, large losses resulted through the fraud and gross negligence of the officers and directors of the company; that in particular these losses resulted from excessive loans to one, Weisberger, on insufficient collateral, an over-issuance of stock, the declaration and payment of dividends out of capital, and the reemployment of a suspected officer who subsequently stole $16,000 worth of collateral pledged

with the company. The answers filed by the defendants, who are the present appellants, were substantially the same and admitted the material facts averred in the bill, but denied negligence or intent to defraud. The case was heard on bill, answer and replication.

The business of the society consisted in lending money on jewelry and other collateral, the value of which was fixed by an appraiser who fixed the amount of each loan after inspecting the collateral. Two reports were submitted to the society by certified public accountants, one on September 27, 1909, and the other on March 11, 1911. The first report showed a depreciation in the capital of more than $69,000, and the second, of more than $122,000. With these reports before them the directors declared a dividend of three per cent., amounting to $2,013, on January 12, 1910, and a like dividend, amounting to $2,796.60, on June 17, 1910. Both dividends were paid. A third dividend of three per cent. was declared on December 17, 1910, but was not paid. The dividends were declared solely on the faith of monthly statements furnished the directors by the treasurer. The statement of December, 1909, showed net earnings of $4,421.11 which was arrived at by subtracting the office expenses from the gross earnings, and no interest or indebtedness, corporation expenses, advertising or commission on sale of stocks were taken into account in ascertaining the net earnings. The value of the loans upon which the earnings were computed was not checked up, and as a matter of fact the loans turned out to be valueless, and the interest on the same which made up the supposed earnings of the society was never paid. The June dividend was declared on a statement which took into account gross earnings, office expense and interest on indebtedness, but not corporation expense, advertising, commissions, or the question of valueless loans. This statement showed the business of the society only for six months. While a dividend of $2,013 was declared in December, 1909, the books of the society

showed that there was, in fact, a net profit of only $1,-595.07; and the dividend of June, 1910, of $2,796.60 was declared when there was a net profit only of $2,-099.64. In ascertaining these profits, the expense of advertising, corporation expense or the commissions or any proportion of the same were not taken into consideration. It is clear that both dividends were paid out of the capital, and they were declared against the objection of one of the defendants that the company should first earn a surplus, although he subsequently voted for the dividend "for the sake of not being disagreeable with the board."

Loans were made to one, Weisberger, which in February, 1910, with interest, amounted to about $53,000. The practice of making large loans to Weisberger was known at first to Sanford, the chief appraiser. Later it was discovered by the secretary and treasurer who divulged it to the counsel for the society and in January, 1911, to the board of directors. Much of the capital to make these loans was obtained by discounting notes with the American Bank for Sanford, as trustee, through the agency of Weisberger. Jewelry was deposited with the notes as collateral, and it was the collateral which Weisberger pledged with the society to secure his loans. The society turned over to Weisberger this collateral which he had deposited with it to secure his loans for the purpose of raising money at the bank. The bank loans amounted to $31,430 from November 1, 1909, to May 3, 1910, and the chancellor finds they could have been discovered by the defendants by the exercise of ordinary care. The directors knew and approved of the practice of borrowing money at the American Bank. From time to time the collateral was repledged to Weisberger for loans made by him to the society. When the loans were paid by the society, the collateral returned to it by Weisberger was substituted jewelry of an inferior quality and less value than that pledged by him to the society. On August 31, 1911, when the directors resigned, the col-

lateral turned over to the new management of the society, and on which Weisberger had received nearly $50,-000, was sold at auction for $1,008. The conduct of the officers of the society in making large loans to one customer and the shrinkage in the value of the collateral were called to the attention of the directors in a report of a certified accountant on March 11, 1911. The chancellor found: "A casual inspection of the books of the society during the period in which the Weisberger loans were made indicates that loose business methods prevailed in the management of the society's business at this time." Notwithstanding the appraiser reported that the Weisberger collateral was of a value of not over $6,109, the directors took no proceedings against Weisberger to compel a restitution or redemption of it.

It also appeared by the evidence that a shrinkage in the value of collateral from $6,109 to $1,008 resulted from theft by Sanford who had been reemployed by the directors on March 31, 1911; also that there had been an over-issuance of 550 shares of stock by the directors.

In disposing of the requests for findings of fact, the learned court found that an auditing committee of the directors was appointed by the board, which never did any auditing; that no system was adopted by the board whereby the collateral on deposit was checked with the loan book or with the cash book; that neither the appraiser nor anyone else checked over the amount of the collateral and advised the board that the loans were represented by appropriate pledges. Executive committees were appointed, but they never met or transacted any business; misleading circulars were issued during the directorate of the appellants, and with their consent as to the financial condition of the society. On March 31, 1911, the defendants reemployed Sanford, although he was at the time suspected of being culpably implicated in the Weisberger losses. By the following August, he had stolen $16,000 worth of collateral from the company. He is now a fugitive from justice.

These and other facts condemnatory of the management of the defendants as directors of the society fully appear from the evidence presented to the learned chancellor in the court below. As suggested above, it is unnecessary to review the testimony as it was found to be sufficiently credible by the chancellor to warrant his findings of fact. Had the directors adopted and pursued a proper system for checking the collateral with the loan or cash book, there can be no doubt that Weisberger's relation with the company would have been detected, and the losses occasioned by him would have been prevented. The condition of the company would also have been known to the directors had the committees performed the duties assigned to them. There could be no excuse for the reemployment of Sanford except, as suggested by one of the directors, that they had reemployed a crook to catch a crook. They knew he was dishonest from his dealings with their own company. His reputation was not based upon hearsay or by information obtained from others. They acted in this respect in total disregard of their manifest duty. The declarations of the dividends were made with full knowledge that there was no real surplus to pay them. When the first and second dividends were declared the directors had before them reports of a certified accountant showing large depreciations of the capital of the society. They not only had this evidence before them disclosing the impropriety of declaring the dividends, but one of their number testified that he, "as a business man objected at the time to declaring any dividend for the reason that I thought we should earn a surplus." They knew, or as reasonably prudent business men should have known, that to justify them in declaring the dividends they were treating as assets certain items of expenditures which in no legitimate sense could be regarded as assets of the society available as a basis for dividends. They acted with a full knowledge of the facts and, as must be assumed, knowing that directors

cannot lawfully declare dividends out of the capital of the corporation.

The learned court below found that the defendants were guilty of gross negligence in the conduct of the affairs of the loan society, and held that they should account to the society because (a) the defendants, while directors of the corporation, and in spite of the protests of one of their number, knowingly declared dividends which had not been earned; (b) the directors, by the want of ordinary care, permitted fraudulent transactions with Weisberger which resulted in a loss to the society of some $40,000; (c) the directors by the employment, in a responsible position, of a person already under suspicion, made possible the theft of several thousand dollars from the society; and (d) the directors, through want of ordinary and reasonable care, permitted the over-issuance of stock which appears to be still outstanding.

This result was obtained by holding the defendants responsible for gross negligence in the performance of their duties as directors, which certainly is no higher degree of care than reason or precedent imposes. The rule generally applied is reasonable and ordinary care, skill and diligence in conducting the business of the corporation. The learned chancellor did not transgress this standard, and did not adjudge the defendants at fault merely because of an error of judgment. This is the standard adopted in this State, and the failure to observe it imposes liability on a defaulting director. The question is discussed in Spering's App., 71 Pa. 11, which is a leading case on the subject. Mr. Justice SHARSWOOD, after reviewing the American and English cases, says, inter alia (p. 21) : "Upon a close examination of all the reported cases, although there are many dicta not easily reconcilable, yet I have found no judgment or decree which has held directors to account, except when they have themselves been personally guilty of some fraud on the corporation, or have known and connived

at some fraud in others, or where such fraud might have been prevented had they given ordinary attention to their duties. I do not mean to say by any means that their responsibility is limited to these cases, and that there might not exist such a case of negligence or of acts clearly ultra vires, as would make perfectly honest directors personally liable." In Trustees of the Mutual Building Fund & Dollar Savings Bank v. Bosseiux, 3 Fed. Repr. 817, HUGHES, J., in delivering the opinion, after referring to Spering's App., says, inter alia: "I think it is a sound proposition of law that, whenever there would be liability if the fraud had been practiced by directors themselves upon the complainant, there is like liability if there has been that gross negligence on the part of directors which has permitted the fraud to be practiced by officers under their control." In Devlin v. Moore, 130 Pac. Repr. 35, the court says: "If directors know, or by the exercise of ordinary care should have known, any facts which would awaken suspicion and put a prudent man on his guard, then a degree of care commensurate with the evil to be avoided is required, and a want of that care makes them responsible. Directors cannot, in justice to those who deal with the bank, shut their eyes to what is going on around them." In Childs v. White, 142 N. Y. Supp. 732, it is said: "Directors are bound to use a reasonable degree of care in the performance of those acts which, under the circumstances, prudence would fairly seem to require them to perform is, in the light of the authorities, a lenient statement of the rule of law affecting this subject."

The contention of the defendants that the bill cannot be maintained because it was brought by the corporation and the money received by the stockholders as dividends was nothing more than the pro rata distribution of capital among them for which they cannot claim to be reimbursed is not tenable. The suit is by the corporation which seeks, under a new management, to reinstate the capital, seriously impaired by the illegal acts of the de-

fendants as directors, and then to continue the business. The corporation, therefore, represents the interests of the creditors as well as the present shareholders and it may become necessary in the future, if not at the present, to use the capital for payment of debts. The well recognized distinction between the shareholders and the corporation will permit a suit by the latter when the former would not be heard to complain. If this were an action by the holders of the stock they could not compel the former directors to replace the part of the capital they had already received by way of dividends. But the corporation is a going concern and is not in liquidation, and hence its rights as well as its duty to compel the replacement of its capital. This is necessary for the protection of creditors in the future as well as the present stockholders who may not be the persons to whom the dividends were paid five years ago. Sir George Jessel, M.R., said in Flitcroft's Case, L. R. 21 Ch. Du. 519: "It follows then that if directors who are quasi trustees for the company improperly pay away the assets to the shareholders, they are liable to replace them. It is no answer, that the shareholders could not compel them to do so. I am of opinion that the company could in its corporate capacity compel them to do so, even if there were no winding up." In the same case BRETT, L. J., said: "In my opinion the corporation could at any time before the winding-up have compelled the directors to replace the moneys thus improperly expended, and the liquidator now can do so. Even if the shareholders had all sanctioned what was done, and had remained the same throughout, still the company could have sued the directors for a breach of trust. They are trustees for the company, not for the individual shareholders."

The décree of the court below is affirmed.