## GROVES v. ALEXANDER

[No. 61, September Term, 1969.]

*Decided December 5, 1969.*

716

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and SMITH, JJ.

*Leonard H. Lockhart,* with whom were *Baker & Lockhart, Hyman Ginsberg* and *Ginsberg & Ginsberg* on the brief, for appellant.

*Melvin J. Sykes,* with whom was *William B. Evans* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

A divorced wife is appealing from a summary judgment in favor of her former husband for $17,000, a

quarterly payment of "alimony" she had agreed in a separation and property rights agreement to pay him on March 1, 1968. The wife claims that after the divorce and after she had made one of the agreed payments, the husband obtained custody of the children despite his having led her to believe he would not ask custody, and seeks to justify her refusal to make the payments she had agreed to make by saying the agreement was based on a promise to facilitate or not defend a divorce of him by her or both and was therefore invalid. Judge Rollins found that the agreement was valid as a matter of law under Pennsylvania law which the parties had stipulated would control the interpretation and effect of the agreement. We agree with Judge Rollins and find that he properly granted summary judgment against the wife.

The respective affidavits and the exhibits reveal the following: the parties were married in 1949 and made their home in Pennsylvania until their separation. He still lives in Pennsylvania, she has remarried and now lives in Cecil County, Maryland. They have six children ranging in age from seventeen to six. They separated in 1965 and various court proceedings ensued, the precise nature of which does not appear except for a support suit against the husband and a case involving the custody of the children.

The wife is an extremely wealthy woman and the husband is a practicing physician with a substantial income and some estate. Their long and detailed separation agreement dated October 5, 1967, and a supplementary agreement of the same date (but executed two weeks later), dealing with the tax consequences of the wife paying the husband "alimony," which were prepared by a West Chester, Pennsylvania lawyer who represented the husband and a Philadelphia lawyer who represented the wife, reflect the wealth and the tax problems involved. Each party then thought their promises and agreements were fair and believed the advice of their lawyers that they were legal, for in the agreement they recited that

"each believes the agreement to be fair, just and reasonable."

In the document neither agreed to seek or obtain or facilitate a divorce or not to defend a divorce case brought by the other, although obviously the couple contemplated, as is usually the case in their situation, that one or the other would seek a divorce for the agreement provided that, "Nothing in this agreement shall in any way deprive either party of the right to begin or prosecute proceedings for divorce against the other or to defend against the same," and various provisions of the agreement are related to the possibility of divorce.

The provision in the agreement that has led to the present controversy was that the wife would pay the husband alimony as follows: $24,000 ten days after a divorce, $17,000 quarterly for three payments, $18,750 quarterly for six years from the first payment and thereafter $12,500 quarterly, all until the death of the husband or the death of the wife or the 21st birthday of the youngest surviving child. The supplemental agreement made the wife's obligations to pay the husband in the event of divorce conditional on the allowance of these payments as income tax deductions to her and on their being charged as taxable income to the husband. The reasons the wife agreed to make these "alimony" payments become manifest on two reflections. First, under Pennsylvania law the mother as well as the father is responsible for the care and maintenance of a child who cannot care for himself, and the obligation of support in that State does not include the obligation to provide a college education in the absence of agreement to do so.[1] In the agreement the husband promised to pay the tuition of each child in school and his or her board and tuition at college. Second, the wife could furnish the husband the money to do this by paying him "alimony" without much cost to her because her taxes on her very large

---

1. Act of June 24, 1937, P.L. 2045, § 3, as amended, Pa. Stat. Ann. tit. 62, § 1973. *See* Note, 67 Dickinson L. Rev. 200.

income would be substantially lessened at the expense of the husband and federal and state governments (the husband says in his brief she would actually be out of pocket less than thirty cents on each dollar paid under the agreement).[2]

The parties were divorced in Philadelphia County, Pennsylvania, on November 21, 1967, at which time the wife had custody of the children. Two days later the husband brought an action for custody. Some three weeks later the wife paid the husband $24,000, the first payment called for by the agreement. When the next payment of $17,000 came due, the wife refused to make it. The husband's affidavit states that the only reason given by the wife for her continued rejection of his frequent demands for payment was "her difficulties with [him] concerning child custody." The wife's affidavit does not contradict this. After protracted litigation, the husband was awarded custody of the children by the Court of Common Pleas of Chester County, Pennsylvania.

To these undisputed facts the wife sought to add by her affidavit in opposition to the summary judgment against her various assertions she claims to be material facts which are in dispute. In her affidavit she summa-

---

2. Sections 71 and 215 of the Internal Revenue Code of 1954 establish how this would come about: The payments will be deductible to the wife and taxable to the husband if the parties are divorced under a decree of divorce and the obligation of the payment is imposed or incurred under the decree or a written instrument incident thereto, or a written agreement specifying periodic payments made under such agreement and because of the marital relationship of the parties theretofore subsisting.

Sections 71 and 215 speak of payments by the husband to the wife and of the deductibility by the husband and includibility in the income of the wife. However, § 7701(a) (17) of the Internal Revenue Code provides "As used in Sections 71, * * * 215, * * * if the husband and wife therein referred to are divorced, wherever appropriate to the meaning of such sections, the term 'wife' shall read 'former wife' and the term 'husband' shall be read 'former husband;' and if the payments described in such sections are made by or on behalf of the wife or former wife to the husband or former husband instead of vice versa, wherever appropriate to the meaning of such sections, the term 'husband' shall be read 'wife' and the term 'wife' shall be read 'husband.' "

rizes the provisions of the agreement and argues that on their face they show an agreement for the purchase of a divorce,[3] and she makes the direct charge in broad conclusory form that procurement of a divorce was the illegal purpose of the agreement. Maryland Rule 610 b demands that an affidavit in opposition to a motion for summary judgment must state "on personal knowledge \* \* \* such facts as would be admissible in evidence." There is no statement in the wife's affidavit of any fact as to anything the husband told the wife which was other than or different from that expressed in the agreement, and no statement of any fact which would support or necessarily imply the conclusion that the "purpose" of the agreement was different from the purposes therein set forth. There were alleged no facts as to any collusive agreement collateral to the written document or sup-

---

3. The elaborate agreement includes in addition to the matters already referred to numerous immediate and absolutely unconditional provisions as follows:

(a) a provision establishing the lawfulness of the existing separation and covenanting on the part of each not to molest or interfere with the other; (b) division of the furniture and household articles of the parties on the basis of possession at the time of the agreement; (c) allocation to the wife of all personal property registered in her name or in her possession, excepting only securities which were registered in the husband's name but in the possession of the wife, as to which special provision was made in the agreement; (d) allocation exclusively to the wife of all real and personal property held in the joint names of the parties; (e) elimination of any right, marital, statutory or otherwise of either party in the property of the other, including property acquired by either party by reason of the agreement; (f) mutual guarantees against liability of each party for debts incurred by the other; (g) an agreement by the husband to sign and file joint income tax returns for each year that is lawful to do so; (h) an agreement by each party to pay such proportion of income tax liability for past years as may be allocable to the disallowance of deductions or the increase of income of such party; (i) an agreement to give the wife control of all controversies regarding matters relating to her income on the federal income tax returns of the parties; (j) acceptance by each of the parties of the provisions of the agreement as full discharge of all financial obligations of the other; (k) a release by each party of the estate of the other against all claims except claims under the agreement; (l) a provision for counsel fee for the successful party in the event of legal proceedings to enforce the agreement; and (m) a provision that the contract shall be construed in accordance with the laws of Pennsylvania.

porting a contention that the consideration was not as expressed in the writing but really was rather the consent to and connivance in the procurement of a divorce by either party from the other. The only significant language in the affidavit which is akin to a material factual allegation is that part which states that the wife was led to believe by her former husband that she would be permitted to retain custody of the children and obtain a divorce if the monies called for by the agreement were paid. Apart from the fact that she does not state in terms what the husband actually said, the time at which she came to this belief, which she relates in the affidavit to "when the divorce was obtained," was November 19, 1967, a month after the supplementary agreement was signed and six weeks after the terms of both agreements had been fixed and accepted by both. The affidavit recites that the $24,000 she paid in December 1967 was paid "based upon" her impression, allegedly conveyed to her by the husband, that she could retain the children and obtain a divorce if the payment was made. However, the obligation to make the payment was assumed by the wife in the agreement executed well before the divorce, and the payment was made three weeks after the divorce had already been obtained.

We consider the allegations and recitations which make up the wife's affidavit to add up to no more than an argument that the law of Pennsylvania renders the written agreement invalid on its face. We find that argument to be unsound under the applicable cases decided by the Supreme Court of Pennsylvania which, as we read them, support the action Judge Rollins took in granting the husband a summary judgment.

In Pennsylvania a contract between husband and wife executed in contemplation of divorce and containing provisions as to property or support to take effect in the event of a divorce or dependent upon the event of a divorce within a limited period, is legal and effective; a similar contract made in consideration of the procure-

ment of a divorce or requiring a divorce or waiving the right to defend against a divorce or requiring collusion, such as the fabrication of evidence, is against public policy and is illegal. See *Zlotziver v. Zlotziver*, 355 Pa. 299, 49 A. 2d 779, 781, where Justice Stern (later Chief Justice) for the Court pointed out the distinction:

> "As to the third defense, a contract is illegal if it has for its objective the procurement of a divorce, as where the husband or wife agrees to institute, or not to defend, a suit for that purpose: In re Mathiot's Estate, 243 Pa. 375, 90 A. 139; In re Shannon's Estate, 289 Pa. 280, 137 A. 251. But here there was no such contract. An agreement as to alimony or an adjustment of property rights between a husband and wife is perfectly proper and valid even though made in contemplation of a divorce: Miller v. Miller, 248 Pa. 414, 418, 419, 131 A. 236, 238; American National Bank of Camden v. Kirk, 317 Pa. 551, 177 A. 801; Forbes v. Forbes, 159 Pa. Super. 243, 246, 48 A. 2d 153, 155. If plaintiff's charges in regard to defendant's marital derelictions are justified she presumably will be awarded a divorce in the proceeding which she has instituted, and it is not contended that defendant at any time agreed that he would not defend such a suit by refuting her allegations if it is possible for him to do so."

*Dora v. Dora*, 392 Pa. 433, 141 A. 2d 587, held that a provision dependent on divorce by a stated date and a provision conditioning delivery of assets held in escrow on a divorce did not make the contract illegal. In *Stern v. Stern*, 430 Pa. 605, 243 A. 2d 319, the agreement provided that weekly payments thereunder would end after six months if no divorce had been obtained by that time and would resume thereafter only if a divorce occurred; it was upheld by a majority of the Court over a strong dissent by three justices which could well serve as a

model for the wife's affidavit of defense. The cases of *Miller v. Miller,* 248 Pa. 414, 131 A. 236, and *American National Bank of Camden v. Kirk,* 317 Pa. 551, 177 A. 801, held explicitly what the later cases seem to accept as settled—that if a contract does not have for its sole purpose or does not contain an agreement to obtain or facilitate a divorce, provisions for settlement of property rights are valid although an imminent divorce was in the minds of the parties and the agreement was made in contemplation of divorce.

Although in some circumstances the Pennsylvania courts have permitted parol evidence as to the legality of a marital property settlement which appears valid on its face, we find the rule generally applied in Pennsylvania to be that in an action to enforce a written property and support settlement valid on its face the defendant may not show illegality or invalidate the document by offering parol evidence of a collateral and collusive undertaking in contradiction of the legal consideration shown in the agreement. *See Irvin v. Irvin,* 169 Pa. St. 529, 32 A. 445, 448-449; *Rodenbaugh v. Rodenbaugh,* 17 Pa. Super. 619; *Miller v. Miller, supra,* at p. 238 of 131 A. In *Dora v. Dora, supra,* at p. 591 of 141 A. 2d the Court said: "the agreement was in writing. Whether or not it amounted to a contract to obtain a divorce was a question of law to be passed upon by the Court on the basis of the terms of the written instrument." In *Stern v. Stern, supra,* at p. 320 of 243 A. 2d, where in a suit at law for unpaid weekly payments called for by an agreement which the defendant urged was illegal because its promises were conducive to divorce (a claim with which the dissenters agreed) and for lack of consideration, the Court said:

> "Appellant also asserts numerous errors in the court's charge and in its conduct of the trial. We find it unnecessary to consider these, however, for we are of the opinion that nothing should have been submitted to the jury in the

first place, since the only questions were questions of law for the court. We hold that the agreement sued upon was not inimical to the public policy of the Commonwealth as conducive to divorce, and that there was valid consideration for the agreement to pay money to an ex-wife."

We have no doubt the agreement before us is valid on its face, is supported by consideration, that the wife could not offer parol evidence of collateral understandings or promises, and that if it be assumed that she could, her affidavit of defense was insufficient to present a disputed question of material fact. The summary judgment against the wife was rightly granted.

*Judgment affirmed, with costs.*