## Davis v. First National Bank of West Chester

*Jon A. Baughman* and *John A. Saling,* for plaintiff.
*Joseph N. Ewing Jr.* and *John S. Halstead,* for defendants.

SMITH, *J.,* October 26, 1984—This case comes to us on the preliminary objections by the various defendants to the complaint. We dismiss in part and grant in part.

This action was commenced in equity by Brooke W. Davis, a minority shareholder of The First National Bank of West Chester, as a derivative suit against various officers and directors of the bank. Count I and II of the complaint allege that the various directors failed to perfect a security interest in collateral in connection with a loan made to Walter B. Gooslin, and that they further extended another loan to Gooslin on the same unsecured collateral despite warnings of the collateral's deficiencies. On the basis of these facts, the complaint charges gross negligence, recklessness, willfulness, bad faith, and breach of a fiduciary duty.

Counts III and IV allege irregularities regarding a loan to Fred Cadmus. Among the allegations are that several of defendants misrepresented to the board the size of Cadmus's deposits with the bank, the status of the bank's interest in the loan collateral, and the investigation into the deficiencies involved with the loan. Based on these and other facts found in the complaint, plaintiff charges negligence, gross negligence, willful and reckless mismanagement and misconduct, bad faith and breach of fiduciary duty.

Count V of the complaint alleges that the bank lacks a uniform and comprehensive policy and system governing the approval and monitoring of loans and loan collateral and that the lack of such policy and system was partially responsible for losses suffered from the Cadmus and Gooslin loans. The complaint prays for damages (including punitives) for losses from the two loans, damages for losses in connection with other acts by defendants of gross mismanagement and negligence, attorney's fees and costs, plus an order to the bank and the directors to establish a new, uniform and comprehensive loan policy.

The preliminary objections raise several issues:

(1) that plaintiff did not make the demand on the board, as required by Pa. R.C.P. 1506(2);

(2) that the comptroller of the currency has primary jurisdiction over this matter, and that visitorial powers are not with the power of this court as called for in Count V;

(3) that the complaint lacks the specificity required to support a claim of gross negligence, mismanagement, and breach of fiduciary duty;

(4) that an adequate remedy at law exists in the form of money damages, and that this action therefore does not belong in equity;

(5) that punitive damages are not allowed in equity, and absent evidence of outrageous conduct; and (6) that plaintiff lacks "clean hands."

## I. The Sufficiency of the Demand

Defendants maintain that Counts III and IV (referring to the Cadmus loan) must be dismissed because plaintiff did not make a proper demand for a remedy with the board of directors. Furthermore, they maintain that the entire complaint should be dismissed because plaintiff has not specified the action taken by the board of directors to his demand, nor has plaintiff averred that he made any effort to secure his rights at a shareholders' meeting.

Pa. R.C.P. 1506 states:

"In an action to enforce a secondary right brought by one or more stockholders or members of a corporation or similar entity because the corporation or entity refuses or fails to enforce right which could be asserted by it, the complaint shall set forth . . . (b) the efforts made to secure enforcement by the corporation or similar entity or the reason for not making any such efforts." Pa. R.C.P. 1506(b).

Although the rule refers to "efforts" generally, the cases hold that a stockholder must demonstrate that "he left nothing undone which he might have done to prevail on the corporation to bring such action." Passmore v. Allentown & Reading Traction, 267 Pa. 356, 359, 110 Atl. 240, 241 (1920). Specifically, there must be averred and proved (1) an actual application to the directors, (2) a refusal by them to bring suit or to allow plaintiff to do so in the corporate name, and (3) where misconduct of the directors themselves is alleged, the bill must show an effort to secure the plaintiff's rights through a meeting of the corporation. Wolf v. Pennsylvania RR Co., 195 Pa. 91, 94, 45 Atl. 936 (1900).

In the case before this court, plaintiff made a sufficient demand on the board to redress the losses incurred from acts connected with the Gooslin loan in a letter dated November 16, 1984. Complaint, exhibit "A". After the letter was sent, plaintiff, "together with counsel . . . set forth in detail to the bank and its counsel the willful, reckless, and grossly negligent acts of defendant officers and directors in relation to the Cadmus loans, and demanded redress." There is nothing in the case law nor in the rules that require that this demand be made in writing. The case law merely states that the demand be on the board of directors. Thus, plaintiff made sufficient demand on the board regarding both the Gooslin and Cadmus loans.

The second requirement that must be met to maintain a stockholders' derivative suit is that one plead the response of the board specifically. Moore v. Keystone Macaroni Mfg. Co., 84 D. & C. 397 (1951). While Moore refers to this rule, the court there held that plaintiff did not have to plead facts which only the directors themselves would have knowledge. In the case before us, plaintiff maintains that only defendants are able to say for certain what explains their inaction. We agree. Plaintiff's allegation of the board's lack of response is sufficient to meet Rule 1506(2).

The third requirement for the institution of a derivative suit is that plaintiff take his case to the stockholders in the event that the board does not act. Plaintiff did not do this.

The Pennsylvania Supreme Court has stated that if "there is not time to remove (the officers) and elect other officers, the shareholder . . . may institute proceedings in equity for relief." Passmore v. Allentown & Reading Traction Co., supra, at 359 (Emphasis added.)

Plaintiff argues that shareholder action here would take months, "inviting further disasters and waste of corporate assets, while the bank's chaotic loan practices continued unchecked." Furthermore, defendants control a large portion of the stock, with the rest of the stock widely distributed among around 500 shareholders. We agree that a battle involving this many stockholders would be extremely expensive. Thus, we find that there is ample excuse for no plea before the entire corporation. As plaintiff left nothing undone, we dismiss the preliminary objections based on Rule 1506(2).

## II. Jurisdiction of the Comptroller

Defendants argue that this case is within the primary jurisdiction of the comptroller of the currency.

The comptroller of the currency protects the public and the National Banking System. "Nothing in the language of (12 U.S.C.) §481 purports to impose any duty on the comptroller to protect shareholders. . . . Federal examination of national banks was designed to provide the comptroller with information necessary to perform his regulator function." Harnsen v. Smith, 586 F.2d 156, 157 (9th Cir., 1978). Furthermore, nothing in Title 12 of the U.S. Code says that the comptroller has exclusive jurisdiction of all national banking matters. States may exercise jurisdiction so long as they do not interfere with the purposes of the bank's creation, impair or destroy their efficiency as federal agencies, or conflict with a paramount law of the United States. Pennsylvania Bankers Ass'n. v. Bureau of Consumer Protection, 58 Pa. Commw. 170, 427 A.2d 730 (1981). There is nothing in this case which will interfere with the purpose of the bank's creation, impair its effectiveness as a federal agency

or conflict with federal law. Finally, since state law governs in the matter before us,[1] this court finds that it has jurisdiction over this matter.

However, regarding Count V, regardless of the jurisdiction of the comptroller in this matter, this court will not exercise jurisdiction. Count V asks us to order the bank to implement a comprehensive and uniform loan policy. The role of the court does not include acting as a super-loan committee. A matter such as loan policy is subject to business judgment, and as such, it is best left to the discretion of the corporation,[2] especially in this the last bastion of local banking in the county seat. We therefore dismiss Count V.

---

1. "The National Bank Act does not specify how the Board of Directors is to govern itself. This is a matter of state law." Golar v. Daniels & Bell Inc. 533 F.Supp. 1021, 1027 (S.D.N.Y. 1982).

2. The Pennsylvania Supreme Court stated in Spring's Appeal, 71 Pa. 11, 10 Am. Rep. 684 (1872), that directors "are not liable for mistakes of judgment, even though they may be so gross as to appear to us absurd and ridiculous, provided they are honest and provided they are fairly within the scope of the powers and discretion confided to the managing body." Spring's Appeal at 24.

The so-called "business judgment rule" complements the concept of negligence. As stated in Casey v. Woodruff, 49 N.Y.S.2d 625 (1944):

"When courts say that they will not interfere in matters of business judgment, it is presupposed that judgment — reasonable diligence — has in fact been exercised. A director cannot close his eyes to what is going on about him in the conduct of the business of the corporation and have is said that he is exercising business judgment. Courts have properly decided to give directors a wide latitude in the management of the affairs of a corporation provided always that judgment, and that means an honest, unbiased judgment, is reasonably exercised by them." Casey v. Woodruff, at 643.

### III. Standard of Care Required, and The Specificity With Which It Must Be Pleaded.

Defendants argue that the facts alleged by plaintiff are not enough to establish gross negligence, recklessness, or breach of duty, and only support a claim of negligence.

First, we point out that the standard of care for a bank director is not as strict as that for other corporation directors. Bank directors must exercise that diligence, care, and skill with ordinarily prudent men would exercise *under similar circumstances* in like positions. 7 P.S. §1411 (Emphasis added.)

The Supreme Court of Pennsylvania has stated that this standard is less strict than a fiduciary relationship. In Selheimer v. Manganese Corporation, 423 Pa. 563, 224 A.2d 634 (1966) the court states that diligence, care and skill exercised by those "in their personal affairs" is a stricter standard than diligence, care and skill exercised by those "in similar circumstances." Selheimer, at 573-574, 224 A.2d at 641. The standard to be applied to banking directors therefore is fraud, or gross negligence amounting to fraud. Selheimer at 575, 224 A.2d at 641.

We note that our Supreme Court has found that this standard of care for a banking director can be violated when the director issues excessive loans on insufficient collateral. In Loan Society v. Eavenson, 248 Pa. 407, 94 Atl. 121 (1915), defendant director made loans to a Mr. Weisberger, with jewelry as collateral. The bank turned the collateral over to Mr. Weisberger for the purpose of raising money at the bank. When the loans were paid, Mr. Weisberger substituted jewelry of inferior quality for the original collateral. The chancellor found that loose business methods prevailed at the bank and that a casual inspection of the bank books could have

prevented the loss of valuable collateral. On this basis, defendants were liable for gross negligence.

Having determined the standard of care required in such a case, we now determine whether the complaint contains the requisite factual specificity to withstand defendants' demurrer.

Pennsylvania requires fact pleading. Pa. R.C.P. 1019(a).

"A complaint . . . must do more than "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" . . . It should formulate the issues by fully summarizing the material facts. "Material facts" are "ultimate facts," i.e., those facts essential to support the claim. Evidence from which such facts may be inferred not only need not but should not be alleged. Baker v. Rangos, 229 Pa. Super. 333, 349, 324 A.2d 498 (1974).

Furthermore, Pa. R.C.P. 1019(b) requires that averments of fraud or mistake be made with particularity. Our Supreme Court has established two conditions that must be met in order to meet 1019(b)'s mandate. First, the pleadings must explain adequately the nature of the claim to the opposing party so as to permit him to prepare a defense. Second, the pleadings must be enough to convince the court that the averments are not mere subterfuge. Bata v. Central Penn National Bank of Philadelphia, 423 Pa. 373, 380, 224 A.2d 174, 179 (1966), cert. denied, 386 US 1007 (1967).

In the present case, the two requirements set out in Bata are met. The events are clearly stated.

The complaint states that there was no perfection of the security interest for the Gooslin loans. Plaintiff had informed defendant Miller that Mr. Gooslin had sold some of his equipment collateral, but nothing apparently was done to protect the loan. In fact,

another loan was extended to Mr. Gooslin despite plaintiff's warnings of Gooslin's sale of collateral. The bank paid the loan proceeds even though it allegedly knew it was unable to obtain a security interest in proceeds Gooslin would earn from a certain contract. The bank, as a consequence of the lack of secured collateral, lost $175,000.

The complaint sets out what the duties of the bank's finance committee are. The lack of protection of the bank's loan indicate that the finance committee neglected to perform its central function. The raison d'etre of that committee is supervising the loans and investigating and remedying loan deficiencies. The facts pleaded show that the committee just did not do this.

The facts pleaded concerning the Cadmus loan also are detailed enough to establish a claim. The complaint states that there was no security interest perfected nor any second mortgage taken on Fred Cadmus's property. Fred Cadmus stated that his net worth had decreased $600,000, but the board continued the loan at the original rate, in violation of bank policy calling for increases in the prime rate in such a situation. Despite warning that Cadmus might be selling his business for which he took the loan, no action was taken to perfect the security interest in the collateral, no action was taken to obtain proceeds of the sale of Cadmus's business, and judgment notes were entered only two days after the bankruptcy. Thereafter, the entire board was informed that there was no mortgage, or security interest in the Cadmus property. Because the loan was unsecured, the bank lost $175,000.

These facts certainly explain the nature of the claim, so that defendants should have little trouble preparing a defense to these. Furthermore, this court is convinced that these averments are not a

mere evasive tactic. They are specific enough to withstand defendants' challenge.

## III. Adequacy of Remedy at Law

Defendants argue that the remedy called for is money damages, and therefore, this action should not be in equity. A derivative suit is a creature of equity, and therefore it should be brought there, regardless of the remedy sought.

## IV. Punitive Damages

In his prayer for relief, plaintiff asks for punitive damages. Although an equity court can award damages for tort once it establishes jurisdiction over a case, Wortex Mills Inc. v. Textile Workers' Union, 380 Pa. 3, 109 A.2d 815 (1954), decrees in equity "even in fraud cases, are given for the amounts out of which one is defrauded, not for punitive damages. Double recoveries are not allowed." People's National Bank v. Kern, 193 Pa. 59, 63, 44 Atl. 331 (1899).

There are three general reasons given for equity's bar on punitive damages. First, equity courts do not have the power to give punitive damages without a statute expressly granting it.[3] Second, punitives are not compatible with the principles and practice of equity.[4] Third, a plaintiff waives his claim to punitives by going into equity.[5]

For this reason, we grant individual defendants' preliminary objection 24, dismissing the claim for punitive damages in the complaint.

---

3. Elizabeth v. American Nicholson Pav. Co., 97 U.S. 126 (1828).

4. Livingston v. Woodworth, 15 How 546 (1853).

5. U.S. v. Bernard, 202 F. 728 (9th Cir. 1913).

## ORDER

And now, this October 26, 1984, plaintiff's request for punitive damages are denied. Count V is dismissed. All other preliminary objections made by defendants are dismissed.