American National Bank of Camden, Admr.,
Appellant, *v.* Kirk et al.

Argued January 16, 1935. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Robert G. Hendricks,* for appellant.

*W. H. Satterthwaite,* of *Bunting & Satterthwaite,* for appellees.

OPINION BY MR. JUSTICE SIMPSON, March 25, 1935:

The bill in equity in this case is filed by the American National Bank of Camden, N. J., administrator c. t. a. of the estate of Charles L. Ley, deceased, against Edward R. Kirk, Dorothy J. Ley Ellis, residuary legatee and devisee under the will of said testator, and Clara Jamison Ley, his widow.

The bill avers that testator on April 1, 1916, executed a mortgage of $3,000 on a property he owned at Wycombe in this State; that, with money furnished by testator, Edward R. Kirk, one of the defendants, paid to the mortgagee the amount due on the mortgage, and, at testator's request, took an assignment thereof, in his, Kirk's, own name; that a few days later, Kirk executed a declaration of trust, stating he would satisfy or assign said mortgage whenever so requested by testator; that testator died April 28, 1931, testate, leaving his residuary estate to his daughter, and without having requested Kirk either to satisfy or assign the mortgage; that plaintiff was appointed administrator of said estate in Camden, N. J., and later received ancillary letters in Bucks County in this State; that Kirk in violation of his trust satisfied the mortgage, and that the mortgaged premises were still a part of testator's residuary estate. The bill prayed (a) a decree that the entry of satisfaction be stricken from the record, and (b) a decree declaring that the mortgage is and shall continue to be a lien on the mortgaged premises as it existed at the time of testator's death, with the same force and effect as if the satisfaction had never been entered. Attached to the bill are copies of the Kirk declaration of trust and of testator's will.

Each of the defendants filed a separate answer. Kirk admitted the facts regarding the assignment of the mortgage to him, Kirk, and alleged that he was to hold it until testator "obtained a divorce from his wife . . . when said mortgage was to be satisfied" of record. He alleged that he had already been compelled to pay one year's estate tax on the mortgage, which the parties in interest had failed to repay, though requested to do so, and that another year's tax was about to be levied. The widow admitted the facts stated in the bill, but averred that testator, as owner of the property, having paid the mortgage debt, the assigned mortgage, which Kirk held subject to testator's orders, was, in legal effect, merged in the title to the land, and should not be held open on the

records. The daughter's answer was substantially the same as the widow's.

After testimony had been taken, the chancellor filed an adjudication, consisting, aside from the discussion, of 17 findings of fact and eight conclusions of law, and reported in favor of dismissing the bill. Plaintiff thereupon filed 25 exceptions, one for each separate finding of fact, and one also for each separate conclusion of law, whether any of either class was favorable or unfavorable to plaintiff's contention, giving as its reason, regarding each of them, that it "is not supported by the testimony."

We have often reprobated this improper and slovenly way of excepting to an adjudication, and might well, because of appellant's disregard of our admonitions, dismiss all of the assignments of error, which are simply a careless renewing of the exceptions, without any consideration regarding their merits or demerits. This course might well be pursued here, since appellant excepts to all the findings, which, if eliminated, would defeat its bill, since it would leave nothing on which to base a decree for plaintiff. A few illustrations will suffice to show the absolute thoughtlessness of the assignments. For instance, a statement by the court that "Equity will not lend its aid to enforce a fraudulent agreement, whether fraudulent in itself, or whether part of a fraudulent scheme" was excepted to, and its dismissal is now assigned as error. So, also, objection is made to a finding that "Clara Jamison Ley, one of the defendants, was the wife of Charles L. Ley, the owner of said premises," though this was averred in the bill and is admitted in all the answers. Now, it too, is assigned as error. The foregoing are but samples of the character of exceptions and assignments, which, of course, should never have been taken or assigned.

In view of these facts, we will make no attempt to review the assignments seriatim, but will state the facts as we gather them from the printed record, and announce our conclusion. Testator and Clara Jamison Ley were

married and lived together in this State. For some unstated reason they separated and he moved into New Jersey, where he applied for a divorce. We do not feel justified in finding, from the evidence produced, that she agreed not to oppose his application. He did say, however,—but to whom does not appear,—that he intended to deed the Wycombe property to her, clear of encumbrances, after he obtained his divorce. Under such circumstances we have recently stated the applicable legal rules to be as follows: "If the contract [between husband and wife] had for its sole purpose the securing of a divorce, the agreement would be held contrary to public policy and, therefore, inoperative. . . . Likewise, an arrangement tending to facilitate the granting of a decree [of divorce] is invalid, and, where collusion appears, as shown by a promise not to defend, . . . it cannot be sustained. However, if the facts negative this idea, a settlement for support or alimony will be upheld, though a divorce was in the minds of the parties . . . or the causes upon which the application is to be based, are, by stipulation, limited": Miller v. Miller, 284 Pa. 414, 418.

Taking the whole case into consideration,—in the absence of testimony, of which there is none, that the wife said she would not oppose the divorce if decedent would give her the property, or that some one else so stated in her presence without her denying it,—we are inclined to consider the presumption of innocence as controlling, especially since there is no averment, in the bill, of a contract between testator and his wife, by which she agreed not to defend the divorce proceeding, if he would give her the Wycombe property, if and when the divorce was obtained, and especially as, also, there is neither averment nor proof that its value was so great as to tend to negative the conclusion that it was but a fair sum to be given to her for her future support.

There is another consideration leading to the same end. Testator died April 28, 1931. This bill was filed September 14, 1932. As more than a year had elapsed be-

tween those two dates, the lien of testator's debts not of record had been lost, as to this property, by lapse of time: Section 1 of the Act of June 7, 1919, P. L. 412, 413. Consequently appellant, whose only interest is that of a representative of the creditors,—even if it could, in respect of their liens, have acted for them instead of their being required to act for themselves,—by lapse of time had lost the right to so act at the time the bill was filed.

We may, perhaps, not inaptly conclude with this extract from the opinion of the court below: "The effect in equity of such a fraudulent scheme is so clearly stated in York v. Robbins, 240 S. W. (Texas) 607, that it may be accepted as the statement of the law in every jurisdiction in which the well-known principles of equity are recognized. The language used in that case is as follows: 'Whatever may be the circumstances, or between whatever parties, equity will never allow a merger to be prevented, and a mortgage or other security to be kept alive, if this result would aid in carrying a fraud or other unconscientious wrong into effect, under the color of legal form. Equity only interposes to prevent a merger in order thereby to work substantial justice.' This statement of the law is based on fundamental principles of equity and is entirely consistent with the decision of our Supreme Court in Loverin Hall & Co. v. Humboldt, 113 Pa. 6." This being so, the assignment of the mortgage to Kirk, legally merged it into the fee in the land, exactly as if the mortgage had in fact been assigned to testator, instead of to Kirk, as testator's representative. And this is so whether or not there was a contract between testator and his wife that she was to get the property if she did not oppose the divorce, as appellant averred but did not prove, or whether or not the assignment to Kirk was a means by which testator intended the mortgage to be held in terrorem over his wife in order to cause her to remain quiescent in regard to that matter.

The decree of the court below is affirmed and the appeal is dismissed at the cost of appellant.