## Doering *v.* Doering, Appellant.

Argued December 15, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT and RENO, JJ. (JAMES, J., absent).

*Gilbert Cassidy, Jr.,* for appellant.

*Karl I. Schofield,* for appellee.

OPINION BY RHODES, J., March 5, 1945:

A decree in divorce was entered by the court below in accordance with the recommendation of the master. The libel and amended libel charged the wife of libellant with desertion, indignities to the person, and adultery. The master recommended the granting of a divorce on the ground of desertion. Respondent has appealed.

We agree with the master and the court below in the disposition of the charges of indignities to the person and adultery. The proof was insufficient to sustain either charge. Libellant's counsel, in his brief, concedes that the acts on the part of respondent were inconsequential, that they amounted "to [no] more than the quarrels and arguments which can and do arise between married couples, giving due consideration to the length of time of the marriage and the circumstances and condition of the parties." As to the adultery charge there is no proof, and no further comment is required.

In large part we likewise agree with what the master and the court below have to say as to the charge of desertion; but we do not agree with the application of the law to the facts which we accept as established by the evidence. Neither the master nor the court below has considered an agreement between libellant and respondent made on November 30, 1931, within two years of the date of the alleged desertion.

The libel charged that respondent wilfully and maliciously and without a just or reasonable cause deserted

libellant on January 6, 1930, and had persisted in said wilful and malicious desertion until the date of the execution of the libel, to wit, July 8, 1941.

The parties were married in 1920. They resided together as husband and wife at the home of libellant's mother in Philadelphia for about five years. Thereafter they lived apart for some time, but resumed cohabitation in the fall of 1927. This continued until the final separation on January 6, 1930. Respondent's reason for leaving libellant was his alleged cruelty.

Assuming that respondent wilfully and maliciously deserted libellant on January 6, 1930, the desertion within the two-year period was reduced to the status of separation, as there was manifest as a result of the agreement of November 30, 1931, an acquiescence of libellant in the absence of respondent.

This agreement provided that it was "the desire of both parties to finally and for all time settle and determine their property rights, rights of support and maintenance and all dower rights or rights in lieu thereof together with any and all other existing rights between said parties growing out of the marriage relation." The agreement acknowledged that they were living apart.

As to the consideration moving from libellant to respondent, the agreement contains the following: "The amount to be paid by the said husband to the second party, at the time of the execution thereof is the sum of seven hundred and fifty ($750) dollars."

The parties then covenanted and agreed to transfer the premises at No. 4356 Pechin Street, Philadelphia, title to which was in both names, to the husband's nominee.

The agreement further provided: "3. The said second party accepts the above mentioned sum and the terms of this agreement in full and complete settlement and release of all claims and demands of every kind or nature against the husband, including all liability now

or at any time hereafter existing or accruing, either on account of support, maintenance, alimony, temporary or permament, dower or rights in lieu thereof, incident to the marriage relation, intending to relieve the husband entirely from all personal claims and demands and from any that may hereafter attach, arising in any manner from the relation of husband and wife and from all claims and interest whatsoever in any property, real, personal or mixed, which the said husband may now own or may at any time hereafter hold or acquire any interest whatsoever, in, either by devise, bequest, purchase or otherwise, it being understood that this settlement is a total and complete release of the said husband by the wife, of all matters and charges whatsoever, and that the said wife shall after this settlement require nothing whatever of the said husband as though the marriage relation had never existed between them." It is obvious from this agreement that the parties intended to live apart permanently.

Libellant paid respondent the $750 stipulated in the agreement, and respondent joined in a deed to libellant's mother for the premises to be conveyed. According to libellant's testimony, the deed was signed and executed at the same time that the agreement was entered into. These were the same premises in which libellant and respondent had lived from 1927 until the separation on January 6, 1930.

In the depositions on respondent's rule for counsel fees and alimony, taken September 29, 1941, and received in evidence by the master, the libel having been filed on July 11, 1941, libellant testified: "Q. Will you tell me what the circumstances under which this agreement was made? A. This agreement was signed, and she was to get a divorce, she had divorce papers served on me after the papers were served on me and she got the money, she would not get the divorce ...... Q. Was this consideration of $750.00 for counsel fee and alimony and your wife agreeing to secure a divorce, or was it

for her interest in the property? A. She signed the agreement for everything, so that it was part for her interest and part that she should secure a divorce, and also for counsel fee and alimony."

It is unnecessary to discuss the question of collusion, as respondent did not press the suit for divorce which she had instituted, and the present action was subsequently brought by libellant. Of course, an agreement which, under the guise of an adjustment of property rights, has as a purpose or consideration the procurement of a divorce is offensive to law and will not be enforced. See *Com. v. Glennon*, 92 Pa. Superior Ct. 94; *Kilborn v. Field*, 78 Pa. 194; *Shannon's Estate*, 289 Pa. 280, 137 A. 251; *Miller v. Miller*, 284 Pa. 414, 131 A. 236; *Mathiot's Estate*, 243 Pa. 375, 90 A. 139.

The validity or invalidity of the agreement is not material for present purposes, but libellant's own declaration that, in return for the payment of $750, set forth in the instrument, part of the consideration was an undertaking to obtain a divorce is of vital importance. See *Olson v. Olson*, 27 Pa. Superior Ct. 128; *King v. King*, 36 Pa. Superior Ct. 33. The separation was at least from the time of the agreement and payment with his consent and acquiescence. *Alexander v. Alexander*, 100 Pa. Superior Ct. 566, 570. What may have been desertion in its inception became a consent separation within two years and is not ground for a divorce. *Kurniker v. Kurniker*, 54 Pa. Superior Ct. 196, 200.

If libellant had subsequently repudiated the agreement as to separation and for divorce and made a bona fide offer to respondent to resume marital relations, which respondent refused, his action could be construed as a withdrawal of the consent to the separation. *Kurniker v. Kurniker*, 94 Pa. Superior Ct. 257, 261; *Weisbrod v. Weisbrod*, 103 Pa. Superior Ct. 267, 156 A. 542. The statutory period would begin to run from the time of such offer and rejection. *Trussell v. Trussell*, 116 Pa. Superior Ct. 592, 602, 177 A. 215.

14

The doctrine is stated in *Kelly v. Kelly,* 51 Pa. Superior Ct. 603, where President Judge RICE quoted with approval from *Butler v. Butler,* 1 Pars. Sel. Eq. Cas. 329. It was there said (pages 608, 609) : " 'Where the withdrawal of one has received the subsequent approbation of the other, the continuity of absence under such circumstances is not a "wilful and malicious desertion." The malice of the desertion arises from its being the perverse act of the one, in refusing the performance of the matrimonial obligations and duties, which the other has the legal right to require. But when such separation has been the result of mutual arrangements, and these clearly established in proof, then each are in equal fault in this particular, and neither can claim a legal right against the other, in consequence of an act in which he or she has been an equal participant. Such assent or acquiescence, however, are revocable acts. And if either party persists in a state of separation after such revocation, he or she thenceforth occupies the position of a party quitting cohabitation of his or her own motion.' "

But libellant continues to complain, ten years after the agreement was made on November 30, 1931, that respondent failed to keep the agreement, that she received the consideration, that "she was to go ahead with the divorce, but she never did it."

The burden of establishing a bona fide offer of reconciliation, rejected by respondent, by which her status was converted into a wilful and malicious desertion is on libellant. *Franks v. Franks,* 129 Pa. Superior Ct. 487, 492, 196 A. 578. Libellant may be able at another time to meet that burden. Compare *Kurniker v. Kurniker,* supra, 94 Pa. Superior Ct. 257.

The decree of the court below is reversed, and the libel is dismissed, at the costs of appellee.