## Gershman, Appellant, v. Metropolitan Life Insurance Company.

Argued November 28, 1961. Before BELL, C. J., JONES, COHEN, EAGEN and ALPERN, JJ.

*William J. Woolston,* for appellants.

*Samuel Kagle,* for appellee.

OPINION BY MR. JUSTICE COHEN, January 2, 1962:

This is an interpleader action wherein plaintiff-appellants, Lois and Michael Gershman, represented by their mother, Rhoda Gershman (first wife of the deceased, Benjamin Gershman) seek to obtain the proceeds of certain insurance policies on the life of Benjamin Gershman as against Benjamin's second wife, Dorothy, the named beneficiary. Appellants claim the funds by virtue of an agreement between Rhoda and Benjamin made just two days before the scheduled master's hearing concerning Benjamin's divorce from Rhoda. By that agreement, Benjamin acceded to Rhoda's request that the children (appellants) be named sole beneficiaries of the policies. Benjamin, however, never complied with the agreement, but, rath-

er, made his second wife, Dorothy, a co-beneficiary with the children.

.The insurance company paid the funds into court. The lower court determined that there was no consideration for the agreement and that the named beneficiaries were the rightful owners. The children have appealed.

Appellants claim that agreements of this sort are binding even as to innocent third persons. They rely on the case of *Hundertmark v. Hundertmark,* 372 Pa. 138, 93 A. 2d 856 (1952), where the husband and wife agreed that the husband should continue the wife as beneficiary of certain life insurance policies after the divorce. However, the issue in the present case arises from the very point on which this case differs factually from *Hundertmark.* The agreement in *Hundertmark* was an integral part of the separation and property settlement agreement for which that court expressly held there was adequate consideration. *Hundertmark* supra, at 142. In the present case, the parties had concluded their property settlement agreement more than one month before the agreement concerned in this appeal, and the question involved is whether the subsequent agreement was supported by consideration.

The lower court held that the subsequent agreement was separate and independent of the earlier property settlement and could not stand because it was unsupported by consideration. Its reasons were: (1) the first wife relinquished no legal right in excess of a mere expectancy; (2) the subsequent agreement was not for the children's basic maintenance, required by law, which had been provided for adequately by the property settlement; and (3) the sole purpose for the consummation of the subsequent agreement was that Rhoda had threatened to contest the impending divorce proceedings unless Benjamin agreed to endorse the insurance policies over to the children as beneficiaries—

therefore, any such consideration, being collusive in nature, is void as against public policy.

Appellants appeal only from the last of the three reasons set forth by the lower court. It is settled law, as noted by the lower court, that bona fide agreements relating to the adjustment of property rights between husband and wife, even though made in contemplation of a divorce, are upheld if they are not directly conducive to the procurement of a divorce. *Schmoker v. Schmoker,* 359 Pa. 272, 275, 59 A. 2d 55 (1948). The agreement involved in *Hundertmark* was such a property settlement. The lower court here found, both as matters of fact and law, that the agreement, in contrast with the earlier settlement agreement, was directly conducive to the procurement of a divorce and, therefore, void as consideration. From the record it is clear to us that the lower court's findings were supported by competent and sufficient evidence. Accordingly, we are of the opinion that there is no reversible error on this question.

Appellants, however, raise the question of whether the words "Approved by", followed by the signature of Benjamin Gershman, on the letter constituting the agreement amounted to "an additional express statement, in any form of language, that the signer intends to be legally bound" so as to obviate the necessity of legal consideration in order to create an effective agreement (Uniform Written Obligations Act of 1927, May 13, P. L. 985, §1, 33 PS §6). We merely say, in response to this argument, that we fail to see how the simple approval of the letter constituting the agreement can be considered as "an additional express statement . . . to be legally bound." Nor would a statement even in compliance with the requirements of the act vitalize a contract which is otherwise void as against public policy.

Judgment affirmed.