## Stern *v.* Stern, Appellant.

Argued April 16, 1968.   Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

reargument refused July 24, 1968.

*David H. Kubert,* for appellant.

*Elihu A. Greenhouse,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, July 1, 1968:

This is an allocatur from the order of the Superior Court, affirming per curiam the judgment of the County Court of Philadelphia County. Plaintiff-appellee, Lorraine Stern, ex-wife of defendant-appellant, Kurt Stern, brought suit for payment of arrearages for seven weeks under a written agreement executed on February 7, 1964, at Philadelphia, Pennsylvania, between the parties while they were living together and were still married to each other. This agreement provides, inter alia, for the payment of $75 per week by appellant to appellee under paragraph 8 thereof. Appellant made payments from the time of the execution of the agreement until September, 1965, when he admittedly stopped paying. Verdict was for the plaintiff in the amount of $525 plus $23.61 interest and judgment was entered thereon after denial of defendant's post-trial motions.

Appellant took an appeal to the Superior Court which affirmed per curiam. We granted allocatur.

Appellant asserted two grounds as a defense to the complaint, which grounds he here reasserts in support of his motion for judgment n.o.v.: 1. The agreement was null and void, because it was contrary to the public policy of the Commonwealth, being conducive to divorce. 2. There was no valid consideration for a promise to pay an ex-wife any money after her status as wife ended with a final decree in divorce A.V.M. which she sought and obtained.

Appellant also asserts numerous errors in the court's charge and in its conduct of the trial. We find it unnecessary to consider these, however, for we are of the opinion that nothing should have been submitted to the jury in the first place, since the only questions were questions of law for the court. We hold that the agreement sued upon was not inimical to the public policy of the Commonwealth as conducive to divorce, and that there was valid consideration for the agreement to pay money to an ex-wife.

Appellant's contention that the agreement violates public policy as being conducive to divorce is based on paragraphs 8, 4(f), and 4(g) of the agreement. These provide:

"8. From and after the date of the execution of these presents, Husband shall pay for the comfort, support and maintenance of Wife the sum of $75.00 per week, which payment shall continue until the death of either party hereto, or until the remarriage of Wife, whichever shall first occur; excepting, however, that in the event a final Decree in Divorce A.V.M. has not been awarded either party hereto at the expiration of six months from the date of these presents, such weekly payments shall be forthwith terminated until such time thereafter as such a decree shall have been entered, at

which time Husband shall forthwith recommence payments required to be made hereunder. The termination provision above-noted shall not apply, however, in the event Husband shall contest any proceeding for Divorce, A.V.M. which may hereafter be commenced by Wife. . . .

"4(f) In the event that a final Decree in Divorce, A.V.M. is not granted either of the parties hereto within six months of the date of these presents, the escrowees are authorized and directed to pay unto Husband all sums which may be in their possession and custody provided, however, that this provision shall not apply in the event that Wife shall proceed to obtain a Divorce A.V.M. and Husband shall contest the same and provided further that Husband shall have faithfully performed each and every of the terms, covenants and conditions of this Agreement from the date of the execution of these presents until the expiration of the said period of six months from said date. . . .

"4(g) In the event that no Decree in Divorce A.V.M. shall be entered at the expiration of six months from the date hereof by virtue of the contesting of such action by Husband, the escrowees shall pay to ~~the parties~~ *wife* ~~their~~ *her* (LZS KS) respective shares of the fund at the time such contest shall be commenced."

Appellant claims that these provisions will have a tendency to cause the husband not to contest any divorce action which might be instituted, and thus they are conducive to divorce. If indeed they did have such a tendency, we would agree with appellant. See *Com. v. Glennon*, 92 Pa. Superior Ct. 94 (1927). However, we cannot agree that the clauses actually do tend to induce the husband not to contest. Consider first paragraph 8. Assuming the wife sues for divorce, the husband has two choices: he can either contest or not contest. If he does contest, the wife continues to receive her $75 per week. However, this is no penal-

ty for contesting, because he must pay $75 per week anyway unless no final decree in divorce has been entered within six months. And, if the husband does not contest, surely such a decree will be entered within six months, assuming that valid grounds for divorce exist. In the instant case, that assumption is possible in view of the fact that a decree in divorce was, in fact, entered. In *Miller v. Miller*, 284 Pa. 414, 419, 131 Atl. 236 (1925), this Court held: "[B]ona fide agreements relating to alimony or the adjustment of property rights between the husband and wife, though in contemplation of a divorce, will be upheld if not directly conducive to the procurement of a divorce." Here, in contemplation of a divorce, the agreement was obviously set up to provide for the support of the wife. It was desired that the agreement not continue indefinitely in the event of a reconciliation, and thus the six-months cut-off was provided. The wife would always, of course, retain her rights to sue for the support to which a wife is entitled. The six-months period would be unreasonable, however, if the husband contested the divorce, as proceedings might well continue much longer. Thus, the provision preventing termination if the husband contested was inserted.

A similar analysis reveals that paragraphs 4(f) and 4(g) do not tend to prevent the husband's contesting a divorce by providing penalties therefor. Paragraph 4 set up an escrow account for the proceeds from the sale of the parties' residence. The husband and wife were to share equally in those proceeds, to be distributed according to various provisions in 4(a), (b), (c), (d) and (e) with which we are not here concerned. Then subparagraphs 4(f) and 4(g), reprinted above, follow. Appellant contends that the clause directing the escrowees to pay to the husband *all* of the proceeds in the event a divorce has not been granted within six months,

but to pay the wife her respective share if the delay be occasioned by the husband's contesting the action, is conducive to divorce. Once again, however, this does not tend to cause the husband not to contest. If the husband contests, the wife gets her share. Yet if the husband does not contest and a decree in divorce is granted, the wife still gets her share. The only situation where the wife gets nothing is the situation where there is a reconciliation. Thus, rather than being conducive to divorce, this agreement, if anything, tends to preserve the marriage.

Appellant's other argument in support of his motion for judgment n.o.v. is that no valid consideration exists for a promise to pay an ex-wife money after her status as wife ended with a final decree in divorce A.V.M. which she sought and obtained. We disagree. In *Huffman v. Huffman*, 311 Pa. 123, 166 Atl. 570 (1933), a husband and wife agreed to separate. At that time they had two minor children. For their support, the father was primarily responsible, but in case of his death or inability, that duty, under §1012 of the Act of May 14, 1925, P. L. 762, 787, devolved upon the mother. The agreement, however, provided that the husband would pay $30 per month to the wife for the support of each child, until each child became self-supporting. Subsequently, the wife obtained a divorce and the husband died. Since the children had not become self-supporting, the former wife sued the administratrix of the former husband's estate. The administratrix defended on the ground that there was no consideration for any promise to pay after the husband's death, and the statute imposed the duty of support on the wife, if she is able. Similarly, here, appellant contends there is no consideration for his promise to pay after a divorce, and the wife has the responsibility of supporting herself. This court made

short shrift of the no consideration argument in *Huffman*, supra, at page 126, and the language applies equally well here: "It is idle to say there was no consideration for the agreement; no fraud or overreaching being alleged, the family settlement was, itself, ample consideration: Burkholder's App., 105 Pa. 31; Lineaweaver's Est., 284 Pa. 384; Miller v. Miller, 284 Pa. 414."

Inasmuch as the agreement was valid and was breached, the verdict and judgment for plaintiff were proper. The order of the Superior Court, affirming the judgment of the County Court, is affirmed.

Mr. Justice EAGEN concurs in the result.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I join in Mr. Justice ROBERT'S dissenting Opinion, but I wish to add:

The contract in this case is so obviously a collusive agreement, and is so directly conducive to the procurement of, and a device to induce a divorce, and is so clearly and unquestionably against the public policy of this State, that I am astounded that it is being sustained.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

After correctly stating the principle of law that a contract tending to facilitate the procurement of a divorce is unenforceable as against public policy, *Mathiot's Estate*, 243 Pa. 375, 90 Atl. 139 (1914); *Commonwealth v. Glennon*, 92 Pa. Superior Ct. 94 (1927), the majority concludes that the present contract has no such tendency. I cannot abide by such a conclusion and must therefore dissent.

Paragraph 8 of this contract provides that the wife will no longer be entitled to receive support from

her husband if they are not divorced within six months. This to me gives the wife an obvious incentive to seek a divorce, especially given the fact that the parties were separated at the time the agreement was signed. Furthermore, once the divorce proceedings have been commenced, the only way in which husband can thereafter escape payments under the agreement is to allow the proceedings to proceed uncontested and hope that even though uncontested, the decree does not issue within six months. In this way, he can get a breathing spell from payments. Since this paragraph not only encourages wife to commence divorce proceedings quickly, but also encourages husband not to contest, it would, by itself, be enough to make the contract unenforceable.

But there is even more. Paragraphs 4(f) and 4(g) provide that all the proceeds in escrow from the sale of the Stern's real estate shall pass to husband unless a divorce has been obtained within six months or has not been obtained due to husband's contesting. Once again, there is an obvious incentive for wife to seek a divorce, and a corresponding incentive for husband not to contest it once she begins proceedings. For once wife begins her suit for divorce, the only way husband can hope to get all the escrow funds is to refrain from contesting the divorce, and hope that it is not granted for six months. If he contests, the money will be evenly divided.

It seems clear to me that the teaching of our presently controlling cases, properly applied to this agreement, compels the conclusion that the contract is against public policy, and should not be enforced by this Court, or any other court in our Commonwealth.

I dissent.

Mr. Chief Justice BELL and Mr. Justice MUSMANNO join in this dissenting opinion.