370 A.2d 739

**Barbara J. Weiss LURIE, Appellant,**

**v.**

**Bertram S. LURIE.**

Superior Court of Pennsylvania.

Argued June 15, 1976.

Decided Nov. 22, 1976.

Jack A. Rounick, Norristown, with him Stanley A. Uhr, Monessen, for appellant.

Jordon R. Pitock, Philadelphia, with him Leonard A. Grades, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

This is an appeal from an order dismissing appellant Barbara J. Weiss Lurie's complaint in equity on the ground that the property settlement agreement which the

complaint sought to enforce was invalid and unenforceable because against public policy. We reverse.

On June 2, 1975, while married but living separate and apart, appellant and appellee entered into the property settlement agreement which is the subject of this appeal. The terms of the agreement provided that appellee was to transfer to appellant certain real and personal property, conditioned "[u]pon and in the event of the entry or issuance of a final decree in divorce . . . " within four months of the date of the agreement. A cash payment of $23,000.00, "in full payment to wife for the release by her of such property rights as she may have in jointly or separately owned property . . . " was conditioned as set forth above and was additionally conditioned upon tender of "such resignations as may be requested of her by husband from any position she may presently occupy as Trustee, Officer and/or Director of any trust, corporation or other entity in which husband may be involved as a principal or otherwise. . . . " In the event that a divorce decree was not entered within four months, the agreement was to become null and void and the parties remitted to the appropriate court for determination of their status. The agreement provided that the parties could extend the four month period by agreement in writing. In the event that the resignations were not tendered appellant was to forfeit the $23,000.00 payment, irrespective of compliance with the four month condition.

Appellant instituted an action for divorce a. v. m. on July 1, 1975, a master's hearing was held, and, on October 14, 1975, a master's report was filed. In November, 1975, while the master's report was awaiting action by the lower court, appellant requested a sixty day extension of the four month period. She was advised by letter dated November 17, 1975 that appellee would not consent to an extension. On November 18, 1975 she filed her complaint in equity, admitting that a divorce decree had not been entered within four months but averring that

appellee should nevertheless be required to comply with the terms of the property settlement agreement. An order was then entered and continued after hearing enjoining the escrow agent from returning items held by him under the terms of the agreement until further order of court. Appellee's answer and new matter were filed shortly thereafter, averring that pursuant to its terms, the agreement had become null and void because a divorce decree had not been entered within the four months specified in the agreement. Appellant's reply to new matter countered appellee's defense with allegations that time was not of the essence of the agreement and that, alternatively, the breach was *de minimus*. In the interim, a final decree in divorce was granted.

A further hearing was held on December 31, 1975 before Judge GATES, specially presiding. At that hearing the validity of the property settlement agreement was raised sua sponte and the court requested that the parties submit briefs on the agreement's legality and enforceability. Following oral argument, the lower court held that the agreement was "patently illegal" and unenforceable by a court of equity. In its opinion the court below concluded that the agreement was against public policy and therefore illegal and unenforceable because it was "obviously a collusive agreement" and because it was "directly conducive to the procurement of a divorce." An order dismissing appellant's complaint was entered on February 12, 1976. This appeal followed.

■ The law is well settled that an agreement as to support, alimony, or an adjustment of property rights between a husband and wife is perfectly proper, valid and legal even though made in contemplation of divorce. *Stern v. Stern*, 430 Pa. 605, 243 A.2d 319 (1968); *Dora v. Dora*, 392 Pa. 433, 141 A.2d 587 (1958); *Zlotziver v. Zlotziver*, 355 Pa. 299, 49 A.2d 79 (1946); *American Nat'l Bank of Camden v. Kirk*, 317 Pa. 551, 177 A. 801 (1935); *Miller v. Miller*, 284 Pa. 414, 131 A. 236 (1925); *Greene v. Greene*, 150 Pa.Super. 182, 27 A.2d 525

(1942). Furthermore, our courts have held that the mere fact that a support or property agreement is to be performed "only if a divorce decree is entered, or that it is to be inoperative if a divorce is denied or if the plaintiff fails to obtain it by a certain date, does not establish that it is contrary to public policy. . . . " *Dora v. Dora,* supra, 392 Pa. at 438, 141 A.2d at 591. *See Stern v. Stern,* supra; *Miller v. Miller,* supra; *see also Weiss v. Weiss,* 97 Montg. 54 (Pa.C.P.1973), *aff'd per curiam,* 458 Pa. 617, 319 A.2d 160 (1974).

■ The agreement at issue here, which was clearly entered into in anticipation of divorce, was therefore not illegal because made in "contemplation of divorce." Nor was it rendered illegal by the fact that it was conditioned upon the obtaining of a divorce by one of the parties within four months.

■■ Nonetheless, a contract *is* illegal if it has for its object the procurement of a divorce, as where one spouse agrees to institute a divorce action. *Dora v. Dora,* supra; *Zlotziver v. Zlotziver,* supra; *Mathiot's Estate,* 243 Pa. 375, 90 A. 139 (1914); *Commonwealth ex rel. Miller v. Miller,* 176 Pa.Super. 64, 106 A.2d 627 (1954); *Doering v. Doering,* 157 Pa.Super. 9, 41 A.2d 358 (1944). The instant agreement is not illegal on the above basis either; the property settlement agreement entered here does not contain a provision requiring either party to initiate a divorce action and no agreement obligating either party to refrain from contesting a divorce action initiated by the other appears therein.[1] Ap-

---

1. To the contrary, the introductory language of the contract contains the following statement of its purpose:
   "It is the desire and intention of the parties, after long and careful consideration, to amicably adjust, compromise and settle all property rights and all rights in, to or against each others property or estate, including property heretofore or subsequently acquired by either party, and to settle all disputes existing between them, including any and all claims for Wife's maintenance and support, alimony, counsel fees and costs."

pellee does not contend, nor did the court below hold, that this agreement was a contract to procure a divorce.

However, our courts have also held that a property settlement agreement made in anticipation or contemplation of divorce is not only illegal where the object of the agreement is the procurement of divorce but also where the contract is "directly conducive to divorce." Otherwise stated, contracts tending to facilitate a divorce, although not made for the sole purpose of obtaining a divorce, are illegal. *See, Stern v. Stern*, supra. Our decisions contain specific examples of contracts which have been deemed directly conducive to or tending to facilitate the procurement of a divorce. These include agreements which provide that one of the spouses will not present a defense to an action for divorce by the other, *see Gershman v. Metropolitan Life Ins. Co.*, 405 Pa. 585, 176 A.2d 435 (1962) ; *American Nat'l Bank of Camden v. Kirk*, supra; *Shannon's Estate*, 289 Pa. 280, 137 A. 251 (1927); *Miller v. Miller*, supra, that no appeal will be taken or exceptions filed, *see Glennon v. Glennon*, 92 Pa.Super. 94 (1927), or that one spouse will furnish evidence or aid the initiator of a divorce, *see Miller v. Miller*, supra; *Glennon v. Glennon*, supra.

Although the agreement presently before this Court did not contain an agreement not to defend, an agree-

Additionally, Paragraph One of the agreement contains the following language:

"1. AGREEMENT NOT PREDICATED ON DIVORCE.
It is specifically understood and agreed by and between the parties hereto and each of the said parties does hereby represent to the other, that the execution and delivery of this Agreement is not predicated upon nor made subject to any agreement for the institution, prosecution, defense, or for the nonprosecution, or nondefense of any action for divorce; provided, however, that nothing contained in the Agreement shall prevent or preclude either of the parties hereto from commencing, instituting or prosecuting any action which may, has been or shall be instituted by the other party, or from making any just or proper defense thereto. This Agreement shall remain in full force and effect regardless of any change in the marital status of the parties, except as otherwise specifically set forth herein."

ment not to appeal, or an agreement to provide aid or evidence, the lower court, in its opinion, concluded that this contract's terms were "directly conducive to divorce." The court below held, and appellee argues, that the agreement provided "incentives" and "inducements" to the wife-appellant to seek a divorce within four months.

The question whether an agreement is a contract to procure a divorce or is a contract which is "directly conducive to divorce" is "a question of law to be passed upon by the court on the basis of the terms of the written instrument." *Dora v. Dora,* supra, 392 Pa. at 438, 141 A.2d at 591. In holding that, as a matter of law, the terms of the agreement provided incentive for the wife to seek a divorce, the lower court observed that appellant was to receive the aforementioned $23,000.00, attorney's fees, the couple's house and its furnishings, and an automobile. The lower court also noted that the agreement provided for payment of support prior to any divorce decree and for child support and alimony thereafter. Implicit in the lower court's holding is the conclusion that what the wife was to receive under the agreement was in excess of what she might ordinarily expect and that the generosity of the settlement was disguised consideration for her prompt initiation of a divorce action.

While we recognize that some aspects of the agreement might have been a *factor* in appellant's timely institution of a divorce action, we do not agree with the lower court's tacit conclusion that the agreement was so one-sided that it provided unstated *consideration* for appellant to seek a divorce. On its face, the contract contains independent mutual covenants and obligations and not "incentives" to seek a divorce.

Although the agreement provides that appellee will pay appellant $23,000.00, that payment was not to be made without recompense to appellee. In return for the $23,000 payment, as is noted *supra,* the agreement provided that appellant shall "execute such resignations as

may be requested of her by Husband from any position she may presently occupy as Trustee, Officer and/or Director of any trust, corporation, or other entity in which Husband may be involved as a principal or otherwise." Moreover, it was further provided that "[f]ailure or refusal of Wife to execute such resignation or resignations" worked a forfeiture of the $23,000 payment, irrespective of compliance with the four month requirement.

Appellant was also to receive a conveyance of appellee's tenancy by the entireties interest in the family home. However, appellant was to pay costs incident thereto and to thereafter assume all liability for charges and for the mortgage, thus releasing appellee from his obligations with regard to the house. Additionally, this provision must be read in conjunction with the agreement's presumption that the four children would reside with appellant. By transferring the family home to appellant, appellee accomplishes the practical step of providing housing for the children while shifting the financial responsibility therefor to appellant. The provisions calling for transfer of personalty and the automobile are a similarly practical exchange of property and obligations which take into account the welfare and support of the children. The provisions calling for child support and alimony, while perhaps more generous than could be obtained by decree, are not patently inducive. Finally, the provision for the payment of $750.00 for attorney's fees is made in conjunction with a release of appellee *from all* claims for past, present, or future support, maintenance, alimony pendente lite and costs and is made "in full payment of any and all obligations of Husband for Wife's counsel fees and expenses . . . ." In view of the fact that the single $750.00 payment releases appellee completely from past and future responsibility on these matters, this provision is favorable to *appellee,* not to appellant.

■■ After careful review of the case law, we conclude that the lower court's application of law to these facts was erroneous. We perceive a clear distinction between contracts which have provisions that directly facilitate divorce in the sense that they remove impediments to obtaining a decree and those contracts which provide for a bona fide adjustment of property rights but contain provisions which may be collaterally inducive to an earlier institution of divorce proceedings by a spouse having valid grounds. The contract before us contains provisions of the latter type in that it provides primarily for the adjustment of property rights but is collaterally conducive to divorce because only operative in the event of a decree within four months. "While a contract which is substantially promotive of divorce is void, a contract which is entered into without collusion is not rendered void merely because one factor is inducing a party who has a good cause for divorce to proceed with dispatch to obtain it." 24 Am.Jur.2d, Divorce and Separation, § 894 (1966). There is no evidence of collusion here and we can assume that appellant *had* grounds for divorce; a decree of divorce was granted, *see Stern v. Stern,* supra, 392 Pa. at 610, 243 A.2d at 321.

Order reversed with a procedendo.

SPAETH, J., files a concurring opinion.

PRICE, J., dissents.

SPAETH, Judge, concurring:

The lower court found the separation agreement "so obviously a collusive agreement . . . that it is difficult to conceive of reasonable minds differing." The majority of this court, however, in reversing, perceives "a clear distinction between contracts which have provisions that directly facilitate divorce in the sense that they remove impediments to obtaining a decree and those contracts which provide for a bona fide adjustment of

property rights but contain provisions which may be collaterally inducive to an earlier institution of divorce proceedings by a spouse having valid grounds." Majority at 743.

The majority's opinion is an admirable summary of the law. I suggest, however, that the summary itself belies the statement that there is a "clear distinction" between a valid separation agreement and an invalid one. By what follows I shall perhaps succeed in making the distinction clear only to myself; I hope, however, that some may find it a bit less unclear.

It is often observed that the State is an interested party to any action for divorce. It is often forgotten, however, that the State's interest is quite limited. Thus, sometimes the State's interest is referred to in a manner suggesting that the State is opposed to divorce. *See, e. g., Middleton v. Middleton,* 187 Pa. 612, 41 A. 291 (1898). This suggestion is quite mistaken. The State is only opposed to a divorce contrary to State law. For example, generally speaking, as regards the law of Pennsylvania the State is opposed to a divorce being granted where neither party to the marriage has wronged the other. *Steinke v. Steinke,* 238 Pa.Super. 74, 357 A.2d 674 (1976) (Concurring Opinion by Spaeth, J.). If, however, the divorce is consistent with State law, it cannot be said that the State is opposed to it. For example, and again generally speaking, suppose that one party to the marriage is innocent but that the other has committed adultery, or has subjected the innocent party to cruel and barbarous treatment. The innocent party may for personal reasons decide not to seek a divorce; the decision whether to seek a divorce is not a decision that can be made simply by reference to the law books; one must rather decide according to one's deepest personal convictions of what is right. However, if the innocent party does decide to seek a divorce, it may be said that rather than opposing the divorce, the

State approves of it, for the State has by its law declared that the innocent party is entitled to the divorce.

Once one has defined the State's interest in an action for divorce, one may define the court's responsibility. The responsibility, it turns out, is a dual one. As regards the parties, the court must ensure that their respective conflicting interests are adjudicated impartially and as required by the law. This will require the court to decide whether under the law of evidence a ground for divorce appears. As regards the State, the court must ensure that this appearance corresponds with reality. If it does, the State's interest is served, since the State is only concerned that the party seeking the divorce be entitled to it.

From these considerations it follows that in reviewing a separation agreement, the court must ask whether the parties are attempting by the agreement to create the appearance of a ground for divorce. In other words, are they attempting to induce the court to grant a divorce despite the fact that under State law there is in reality no ground for it? If they are, the agreement may properly be characterized as the result of "collusion," and the court should declare it invalid. *See,* for example, Black's Law Dictionary, 331 (Rev. 4th ed. 1968), which defines "collusion" as:

> An agreement between two or more persons to defraud a person of his rights by the forms of law, or to obtain an object forbidden by law. It implies the existence of fraud of some kind, the employment of fraudulent means, or of lawful means for the accomplishment of an unlawful purpose.

The difficulty with the law—the reason it is unclear —is that this concept of "collusion" has been replaced by, or at least become confused with, the concept that a separation agreement is invalid if it "facilitates" a divorce.

All separation agreements "facilitate" divorce. To hold invalid any agreement that "facilitates" divorce would in practical terms often deny the ability to obtain a divorce. In a State without alimony, like Pennsylvania, a dependent spouse may well refrain from seeking a divorce, regardless of the adequacy of the grounds, without an agreement as to the division of property. There is nothing, however, about the State's interest in divorce that requires such a result. A separation agreement does not in itself affect the existence or non-existence of grounds; it does not induce a divorce in the sense of being the source of the decision to end a marriage. The agreement does certainly make acceptable a divorce that otherwise would not be, but that is no reason to hold the agreement invalid. For the law to ignore these facts, and to pretend that separation agreements do not have the effect of "facilitating" divorce, is to deny reality; yet that is what the law does when it compels the courts to distinguish between those agreements that "directly facilitate divorce" and those that are "a bona fide adjustment of property rights but  .   .  .  .   may be collaterally conducive to divorce  .   .   .   [on] valid grounds."

The idea that a separation agreement is invalid if it "facilitates" divorce seems to derive from some careless language in the cases. The law used to be clear enough that the agreement is invalid only if it is the result of "collusion."

In 1895 our Supreme Court found no difficulty in upholding an agreement by a wife that she would not assign any other grounds for divorce than desertion. *Irvin v. Irvin*, 169 Pa. 529, 32 A. 445 (1895). The Court reasoned that all that could be inferred from this was that the husband, from "a sense of shame", wished to exclude other known grounds from public disclosure. However, the Court found that another agreement (on the facts, only alleged), which provided that the wife would be paid if she sued for divorce, would be contrary to the State's interest in divorce. Said the Court:

If the consideration for the payment of the $4,000 was, that plaintiff should obtain a divorce from her husband, the consideration was a violation of statute by both. The 2d section of the act of 1815 provides, that in her petition or libel she shall set out the cause for the divorce, and under oath or affirmation state that it is not made out of levity or collusion. If this was the consideration for the $4,000, it was in violation of statute, and was so vicious that the contract never had a legal existence: *Kilborn v. Field,* 78 Pa. 194. That the plaintiff and defendant stipulate for a falsehood to the court and contract that one of them shall commit perjury to bolster up the falsehood, clearly renders the contract void ab initio, if based on such iniquity.

*Id.* at 545, 32 A. at 448.

This statement of the law, I submit, accurately recognizes, and fully protects, the State's interest in divorce. Before long, however, the Court departed from it. In *Miller v. Miller,* 284 Pa. 414, 131 A. 236 (1925), the Court remanded with instructions to the lower court to ascertain whether an agreement was based upon an illegal purpose. Under the agreement the husband was to pay support and transfer certain stocks on condition that the wife obtain a divorce within eight months. The Court concluded that if the agreement's sole purpose was to obtain a divorce, it would be invalid, but that if the agreement was a bona fide adjustment of property rights, though in contemplation of divorce, it would be valid if not directly conducive to the procurement of a divorce. *Id.* at 418–19, 131 A. at 238. It is possible to read this conclusion as consistent with the Court's decision in *Irvin v. Irvin, supra.* Thus, the Court specified when it thought an agreement manifested collusion: "as shown by a promise not to defend, nor to furnish evidence . . ." *Id.* at 418, 131 A. at 238. Also, the Court stated that where separation was induced by conduct, not collusion, and where just grounds

exist, an agreement for the settlement of property and maintenance is not "repugnant to public policy." *Id.* at 419, 131 A. 238. Unfortunately, however, the Court also said: "Likewise, an arrangement tending to facilitate the granting of a decree is invalid." *Id.* at 418, 131 A. at 238.

It is this language about "facilitat[ing] . . . a decree" that has been picked up and has led to the current confusion, a relatively recent illustration of which may be found, I submit with respect, in *Stern v. Stern*, 430 Pa. 605, 243 A.2d 319 (1968). In my opinion, we should disavow all references to "facilitation," and never use that expression again. Such a course would clarify the law. It would also harmonize the cases; for when the cases are closely read, it will be seen that the concept that an agreement is invalid because it "facilitates" a divorce has always been something of an excrescence, or distraction; the steady concern of the courts has been whether the agreement is the result of "collusion", whether, in other words, the party seeking the divorce had a good ground for it. Thus, an agreement was upheld where it did not require that a divorce "shall" be instituted, or that one party would not defend, for if the charges were justified a divorce would follow, *Zlotziver v. Zlotziver*, 355 Pa. 299, 49 A.2d 779 (1946); where the "[r]elatrix had good grounds", *Commonwealth ex rel. Rossi v. Rossi*, 161 Pa.Super. 86, 53 A.2d 887 (1947); and where the parties had provided that any cause should be alleged except adultery, *Schmoker v. Schmoker*, 359 Pa. 272, 59 A.2d 55 (1948). The concern that the agreement not stipulate that one party "shall" institute divorce proceedings was clarified by a quotation from American Jurisprudence providing that a separation agreement, though contingent on divorce, is valid where one believes one has cause. *Dora v. Dora*, 392 Pa. 433, 141 A.2d 587 (1958). However, an agreement has been held invalid where it provided that one party would not

file exceptions nor take an appeal, *Commonwealth v. Glennon*, 92 Pa.Super. 94 (1927); or where one spouse agreed not to defend or to appear, *Shannon's Estate*, 289 Pa. 280, 137 A. 251 (1927). Equally unsuccessful were arrangements stipulating that one spouse "shall" institute proceedings, where no grounds existed for a divorce, *Miller v. Miller*, 176 Pa.Super. 64, 106 A.2d 627 (1954); or where the only purpose of a second supplemental agreement was to prevent a threatened contest, *Gershan v. Metropolitan Life Ins. Co.*, 405 Pa. 585, 176 A.2d 435 (1962).

Once we forget about whether the separation agreement "facilitated" the divorce, and focus on preventing "collusion"—defined as the attempt to defraud the court by obtaining a divorce where no ground for it exists—the disposition of the present case becomes relatively simple. As the majority observes, there is no evidence of collusion. Since there is not, there is no basis for holding the agreement invalid.

I therefore concur in the order reversing the order of the lower court.