421 A.2d 310

**Evelyn MULLEN, Appellant,**

v.

**Paul SUCHKO.**

Superior Court of Pennsylvania.

Argued Nov. 14, 1979.

Filed Aug. 8, 1980.

Reargument Denied Oct. 31, 1980.

500

C. James Kutz, Greensburg, for appellant.

Thomas R. Ceraso, Greensburg, for appellee.

Before SPAETH, HOFFMAN and VAN der VOORT, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in sustaining appellee's preliminary objections and dismissing her complaint in assumpsit and trespass. We agree and, accordingly, reverse the order of the court below and remand for further proceedings.

The facts as set forth in appellant's complaint are as follows: Appellant and appellee began seeing each other socially in late 1977. In early 1978, appellee took appellant with him on several overnight trips to cities in the United States and Mexico. Appellee repeatedly requested that appellant quit her job in order to be available to go on more trips with him. He promised that in exchange he "would take care of her for the rest of her life." In reliance upon appellee's promise, appellant quit her job of 33 years and embarked on various trips with appellee. In April of 1978, appellee moved into appellant's home and began paying many of appellant's expenses as well as giving her $500.00 per month. In July of 1978, appellee left appellant's home permanently and stopped assisting her financially.

Based upon these facts, appellant instituted suit against appellee in assumpsit and trespass. The assumpsit count alleged that, as a result of appellee's breach of his agreement to take care of her, appellant had suffered damages including: lost wages, lost employee benefits, and indebtedness to her family for support. Appellant sought judgment on this count of $108,143.17. The trespass count alleged that, as a result of appellee's conduct, appellant had suffered severe emotional distress for which she demanded judgment in excess of $10,000. Appellee filed preliminary objections in the nature of a demurrer to the complaint. With respect to the assumpsit count, appellee alleged that the contract asserted by appellant was contrary to public policy and void because appellee at all relevant times has been a married man. The lower court concluded that the assumpsit count did not set forth a valid cause of action because it was contrary to the public policy against contracts in consideration of sexual intercourse and against contracts facilitating

divorce. Similarly, the court found that appellant had not made out a cause of action for intentional infliction of emotional distress because appellee's actions could not be deemed "outrageous." Appellant now appeals from the court's order dismissing her complaint.

In the case of *Gekas v. Shapp*, 469 Pa. 1, 364 A.2d 691 (1976), our Supreme Court summarized the law to be applied in ruling on preliminary objections as follows:

> The standards for sustaining preliminary objections in the nature of a demurrer are quite strict. A demurrer admits every well–pleaded material fact set forth in the pleadings to which it is addressed as well as all inferences reasonably deducible therefrom, but not conclusions of law. *Buchanan v. Brentwood Federal Savings and Loan Association*, 457 Pa. 135, 320 A.2d 117 (1974); *Borden v. Baldwin*, 444 Pa. 577, 281 A.2d 892 (1971); *Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (1970). In order to sustain the demurrer, it is essential that the plaintiff's complaint indicate on its face that his claim cannot be sustained and the law will not permit recovery. *Hoffman v. Misericordia Hospital of Philadelphia*, 439 Pa. 501, 267 A.2d 867 (1970); *Schott v. Westinghouse Electric Corp.*, 436 Pa. 279, 259 A.2d 443 (1969); *Papieves v. Lawrence*, supra. If there is any doubt, this should be resolved in favor of overruling the demurrer. *Clevenstein v. Rizzuto*, 439 Pa. 397, 266 A.2d 623 (1970).

469 Pa. at 5–6, 364 A.2d at 693.

■ Appellant contends that the lower court could not properly have concluded from the face of the complaint that the law would not permit recovery under the contract. We agree. The lower court based its decision upon two distinct public policy considerations. First, citing the Restatement of Contracts, the court noted that contracts in whole or in part in consideration of illicit sexual intercourse are illegal.*

---

\* Similarly, the California Supreme Court held in *Marvin v. Marvin*, 18 Cal.3d 660, 557 P.2d 106, 134 Cal.Rptr. 815 (1976), that "[t]he courts should enforce express. contracts between nonmarital partners except to the extent that the contract is explicitly founded on the

*See Restatement of Contracts* § 589 (1932). We need not determine whether this statement accurately reflects the law of Pennsylvania. Assuming, *arguendo,* that this is the law, we conclude that appellant's complaint does not set forth a contract violative of the cited principle. The complaint alleges only appellee's agreement that, if appellant would leave her job and make herself available to travel with him, and spend time with him, he would take care of her for the rest of her life. No mention is made in the complaint of a sexual relationship between the parties, nor is it alleged or implied therein that sexual intercourse formed a portion of the consideration for the contract. Thus, the record as it presently stands does not support the lower court's conclusion that appellant sought recovery on a "a promise to take care of her in exchange for meretricious sexual services and nothing else." Slip op. at 4. Accordingly, it was improper for the court to sustain appellee's preliminary objections on that basis.

The lower court also cited the principle that "contracts tending to facilitate a divorce, although not made for the sole purpose of obtaining a divorce, are illegal." *Lurie v. Lurie,* 246 Pa.Super. 307, 313, 370 A.2d 739, 742 (1976). In *Lurie,* this Court summarized the types of agreements which have been deemed invalid because they facilitate divorce. "These include agreements which provide that one of the spouses will not present a defense to an action for divorce by the other, *see Gershman v. Metropolitan Life Ins. Co.,* 405 Pa. 585, 176 A.2d 435 (1962); *American Nat'l Bank of Camden v. Kirck,* 317 Pa. 551, 177 A. 801 (1935); *Shannon's Estate,* 289 Pa. 280, 137 A. 251 (1927); *Miller v. Miller,* 284 Pa. 414, 131 A. 236 (1925), that no appeal will be taken or exceptions filed, *see Glennon v. Glennon,* 92 Pa.Super. 94 (1927), or that one spouse will furnish evidence or aid the initiator of the divorce, *see Miller v. Miller, supra ; Glennon v. Glennon, supra.*" 246 Pa.Super. at 313, 370 A.2d at 742. We concluded in *Lurie* that a distinction exists between

consideration of meretricious services." *Id.* at 665, 557 P.2d at 110, 134 Cal.Rptr. at 819. *See also Kozlowski v. Kozlowski,* 80 N.J. 378, 403 A.2d 902 (1979).

agreements which "remove impediments" to obtaining a divorce and those which are merely "collaterally conducive to divorce." *Id.*, 246 Pa.Super. at 316, 370 A.2d at 743. Only the former are contrary to public policy. Because the agreement under scrutiny in *Lurie* was "a bona fide adjustment of property rights" containing provisions collaterally conducive to "earlier institution of divorce proceedings by a spouse having valid grounds," we found that it came within the category of valid agreements. *Id.* Finally, we noted that there was no evidence of collusion to obtain a divorce where grounds for divorce did not exist. *Id. See also Lurie v. Lurie, supra* (SPAETH, J., concurring).

In the instant case, we conclude that the agreement described in appellant's complaint was no more than "collaterally conducive" to divorce. The alleged contract did not explicitly contemplate divorce, or remove impediments to divorce. The face of the complaint demonstrates no element of collusion to obtain a divorce where no ground existed. Any connection which may have existed between the contract as alleged and a potential divorce was too remote to bring the agreement within the public policy against facilitating divorce. Considering the averments of the complaint, the sparseness of the record, and the presumption in favor of overruling demurrers, we conclude that the lower court erred in sustaining appellant's preliminary objections to the assumpsit count of appellant's complaint. Accordingly, we overrule the preliminary objections to that count and order the case to proceed.

■ Appellant also challenges the lower court's order dismissing the count of her complaint which sought recovery for intentional infliction of emotional distress. The second Restatement of Torts provides that: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Restatement (Second) of Torts § 46 (1965). "It is apparent that the gravamen of this tort is that the conduct complained of

must be of an extreme and outrageous type." *Jones v. Nissenbaum, Rudolph & Seidner,* 244 Pa.Super. 377, 383, 368 A.2d 770, 773 (1977). "Plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind." *Id.*

We agree with the lower court that, even accepting as true all of the facts set forth in appellant's complaint, she has failed to state a cause of action for intentional infliction of emotional distress. Although the actions of appellee were decidedly "inconsiderate and unkind," they were not of the "extreme and outrageous" sort. Accordingly, we affirm that portion of the lower court's order dismissing the second count of appellant's complaint.

Reversed in part and remanded for further proceedings consistent with this opinion.

SPAETH, J., files a concurring opinion.

SPAETH, Judge, concurring:

I agree with the result reached by Judge HOFFMAN, and join in much of what he says. I offer this opinion because I believe that our decision need not rest on reading the complaint as not implying that sexual intercourse was a part of the consideration. If the experience of other states is any guide, we may expect to see an increasing number of cases involving various types of non–marital contracts. It is therefore particularly important that we make clear the standards to be used in determining whether such a contract is in violation of our public policy and hence unenforcible.

In her complaint appellant alleges that appellee said that if she would quit her job, which she had held for more than thirty years, and be available to spend time with him and travel with him during the week, he would take care of her for the rest of her life. Appellant further alleges that in reliance on appellee's promise, she did quit her job and appellee subsequently moved into her house and for a period of several months paid many of her expenses and gave her

approximately $500 a month, but that he then moved out of the house and stopped providing financial support.

The lower court characterized the contract thus pleaded as a contract "to take care of [appellant] in exchange for meretricious sexual services and nothing else." Slip op. at 4. The facts pleaded in the complaint—and these were the only facts properly before the lower court—do not support this characterization of the contract. Not only was the court not free to ignore the facts as pleaded but on demurrer it was obliged to take them as true. *Gekas v. Shapp*, 469 Pa. 1, 364 A.2d 691 (1976). As Judge HOFFMAN points out, there is no allegation in the complaint of a sexual relationship between the parties—much less any allegation that the contract was for "sexual services and nothing else." The question remains, however, whether on a fair reading, the allegations of the complaint imply that sexual intercourse was part of the consideration for the contract.

The lower court relied on the Restatement of Contracts § 589 (1932). According to the Restatement, if illicit sexual intercourse is any part of the consideration for a contract, the contract is unenforcible. However, section 589 goes on to state, in a portion not quoted by the lower court, that the fact of intercourse between the parties to a contract is not by itself enough to invalidate the contract. The key question for the Restatement is whether or not the intercourse forms any part of the consideration.[1] Here, since there is no allegation that intercourse did form any part of the consideration, Judge HOFFMAN reads the complaint as alleging,

---

1. Section 589 is part of Topic 10, Bargains Concerning Domestic Relations, in Chapter 18, Illegal Bargains. In the tentative draft of the Restatement Second this topic has been retitled "Impairment of Family Relations." Restatement of Contracts Second (tent. draft No. 12, March 1, 1977). Nothing in the new Topic 3 corresponds to the old section 589. The introductory note to Topic 3 observes that "[t]his area of law is currently one of reassessment and change, particularly noticeable in connection with the law relating to divorce and to the rights of women. The rules stated in this Topic are intended to meet current needs and are therefore illustrative rather than exhaustive in their content and are flexible rather than rigid in their statement." *Id.* at 129. In light of this position of the drafters of the Restatement Second, we should be particularly careful not to apply section 589 mechanically, or uncritically.

in effect, that intercourse did not form any part of the consideration. Given this reading of the complaint, there can be no question that it pleaded an enforcible contract.

I concede that this approach is consistent with the principle that on demurrer, a complaint must be read most favorably to the pleader. *Gekas v. Shapp, supra.* However, I am not convinced that it was necessary to go so far to protect appellant's interests, even on demurrer.

One way that courts over the years have limited the impact of the "any part of the consideration" language in the Restatement has been by finding two separate agreements, one for sexual intercourse and unenforcible, the other based on other consideration and enforcible. *E. g., Trutalli v. Meraviglia,* 215 Cal. 698, 12 P.2d 430 (1932). *See* Bruch, *Property Rights of De Facto Spouses, Including Thoughts on the Value of Homemakers' Services,* 10 Fam.L.Q. 101 (1976). This line of cases stands behind the language in *Marvin v. Marvin,* 18 Cal.3d 660, 557 P.2d 106, 134 Cal.Rptr. 815 (1976), and *Kozlowski v. Kozlowski,* 80 N.J. 378, 403 A.2d 902 (1979), to the effect that express agreements should be enforced except to the extent that they are expressly and inseparably founded on sexual services. *See also* our very recent case, *Baldassari v. Baldassari,* 278 Pa.Super. 312, 420 A.2d 556 (1980).[2]

In reality, it seems unlikely that apart from a contract for prostitution, many contracts will be found where there is express mention of sexual services. In a way, then, by focusing on the words, cases like *Marvin* and *Kozlowski* avoid what in many instances will be the clearly implied substance of a contract. I therefore prefer the approach taken by the Supreme Court in Oregon in *Latham v. Latham,* 274 Or. 421, 547 P.2d 144 (1976). In that case the court acknowledged that sexual intercourse was a part of the consideration but refused to deny enforcement "where

**2.** The New York Court of Appeals has also just reiterated that for it the key to the enforceability of an express contract between unmarried persons living together is that "illicit sexual relations were not 'part of the consideration of the contract.'" *Morone v. Morone,* 50 N.Y.2d 481, 407 N.E.2d 438, 429 N.Y.S.2d 592 (1980).

consideration was not restricted to sexual intercourse but contemplated all of the burdens and other amenities of married life." *Id.* at 427, 547 P.2d at 147. To me, the importance of *Latham* is the court's willingness to look at the contract as a whole, without closing its eyes to what was clearly implied, or making the result depend on whether the sexual aspect of the contract was "express" or "separable."

I should like to offer two other comments. First, although I agree with Judge HOFFMAN that appellant has pleaded an enforcible contract, I think it should be noted that the damages she pleads do not follow from the breach she pleads. The breach she pleads is that appellee broke his promise to take care of her for the rest of her life. The damages she pleads are not life–time support but lost wages, lost medical benefits, and reduced pension benefits. Second, although I agree with Judge HOFFMAN's analysis of why the contract should not be denied enforcement as tending to facilitate a divorce, strictly speaking, we need not reach that issue, for the complaint does not allege that appellee is married. To be sure, the demurrer alleges that he is, but that simply makes it a "speaking demurrer." *Satchell v. Insurance Placement Facility of Pennsylvania*, 241 Pa.Super. 287, 361 A.2d 375 (1976).

For the foregoing reasons, I concur in the majority's decision that the order of the lower court should be reversed.