**Austin PEOPLES, Jr., Plaintiff,**

v.

**PENNSYLVANIA POWER & LIGHT CO., Defendant.**

**Civ. No. 84–0120.**

United States District Court, M.D. Pennsylvania.

Sept. 27, 1985.

Joseph Wright, Scranton, Pa., for plaintiff.

Lynne Delanty Spencer, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

We address here Defendant's motion for partial summary judgment as to 8 of the 9 counts enumerated in Plaintiff's amended complaint. Defendant seeks to have the scope of Counts I, II, and III restricted to events which occurred subsequent to January 20, 1982. Defendant also seeks summary judgment as to Counts IV through VIII.

This case falls most generally under the ambit of wrongful termination due to racial discrimination. However, Plaintiff also seeks to append various state causes of action and the result has been the 9 count amended complaint alluded to above. We shall consider the viability of these counts sequentially.

## I

Counts I, II, and III are brought on a common basis—Title VII of the Civil Rights Act of 1964 and amendments thereto. More specifically, Count I alleges: "Decisions that Defendant had made with respect to Plaintiff's terms and conditions of employment were influenced, in part, by impermissible racial considerations...." Count II alleges: "Decisions that Defendant has made with respect to the repeated discipline and occasional discharge of Plaintiff were influenced, in part, by impermissible racial considerations...." Count III alleges that: "Decisions that Defendant had made with respect to Plaintiff's opposition to Defendant's unlawful employment practices and/or Plaintiff's use of the grievance mechanism and/or the filing of charges with the Pennsylvania Human Relations Commission is evidence of retaliatory action that is unlawful under Title VII of the Civil Rights Act of 1964, as amended."

Before Plaintiff was represented by counsel this Court had issued a ruling as to what we considered to be the rightful parameters, chronologically speaking, of Plaintiff's claims pursuant to Title VII of the Civil Rights Act. We refer to our *Memorandum and Order* of October 18, 1984 wherein we stated that anything Defendant may have done to Plaintiff prior to January 20, 1982 was beyond the review of this Court due to a provision of 42 U.S.C. § 2000e–5(e) which requires that:

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ..., except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency ..., such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred ... See Docket Item 12 at page 2.

In light of this very explicit statutory language, Defendant has taken the position that our *Order* of October 18, 1984 is dispositive of the date from which this Court should begin analyzing Plaintiff's various Title VII claims. Defendant relies upon the "law of the case" doctrine under which "... a decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation." See 1B *Moore's Federal Practice*, § 0.404 at page 117 (1984). This is not to say, of course, that any pre-judgment ruling of this Court may not be reconsidered by us while the case remains under our jurisdiction. However, in the Third Circuit criteria have been established for use in determining when it is appropriate for a trial court to vacate one of its rulings on a matter of law. The case establishing these criteria is *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162 (3d Cir.1982). *Hayman*, supra at 169–70, provides that there are exceptional situations where the "law of the case" doctrine should not be followed. These include situations where new evidence is available to a second judge hearing an issue or where a supervening rule of law is handed down by a superior court during the course of litigation. The first exception is inapplicable to this case and we are unaware of any supervening rule of law which would require this Court to consider relations between these parties prior to January 20, 1982.

Plaintiff argues that there is case law to support the proposition that "Plaintiffs in Title VII actions are not confined to the specific elements in the charge before the Pennsylvania Human Relations Commission or EEOC.... Subject matter of Title VII Complaint may be broader than the agency charge if the expansion is either reasonably related to the original charge or may reasonably be expected to grow from the original charge." See Docket Item 26 at page 5. In other words, Plaintiff would have the Court find that those events occurring before January 20, 1982 which are "reasonably related" to those after that pivotal date are proper subjects of this Court's consideration. Plaintiff then cites *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir.1970), for the principle

that a judicial complaint filed after the EEOC was unsuccessful in effecting a conciliation between employer and employee "... may encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission." *Sanchez*, supra at 466.

Defendant counters this argument by stating that it agrees with the premise that "... the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Citing *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir.1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977). Defendant goes on to state:[1]

> However, as the Third Circuit explained in *Ostapowicz*, this test was intended to be a rule of limitation, not to open the door to any claim whatsoever involving alleged discriminatory behavior by a particular employer.
>
> .    .    .    .    .
>
> In order to comply with the spirit of the Act, there must be some limitation on suits in the district court so that the Commission will have the first opportunity to examine the allegations of discrimination. *Ostapowicz*, supra at 298 [398].

Our reading of *Ostapowicz* reveals that the Third Circuit therein affirmed a decision of the United States District Court for the Western District of Pennsylvania whereby that trial court had considered matters broader in scope than would have seemed appropriate were the initial charge filed with the EEOC the only thing considered. It is interesting to note, however, that the *Ostapowicz* Court concluded that it was empowered to broaden the scope of its inquiry beyond the initial charge on the basis of other charges *subsequently* filed with the EEOC. This filing of subsequent charges with the EEOC is clearly not a feature of the instant case. Moreover, this

Court finds persuasive the logic of another district court confronted with the identical question we now confront. To wit:

> ... Plaintiffs should not have an unrestrained ability to litigate allegations of discrimination which are neither contained in the EEOC charge nor investigated by the EEOC, thereby frustrating the statutory scheme of informal persuasion and voluntary compliance. Without limitations, the importance of the EEOC conciliatory procedures would be diminished and employers would be denied the opportunity to resolve disputes by EEOC settlement rather than by litigation. See *Hubbard v. Rubbermaid, Inc.*, 436 F.Supp. 1184, 1186, (D.Md.1977).

■ We think the citation above cuts to the heart of the policy considerations which cannot be ignored in making our decision herein. When Congress created the EEOC it intended that that agency would resolve labor disputes stemming from charges of discrimination and, thus, limit the number of cases which would ultimately be resolved in district courts. As the Third Circuit has noted in *Fekete v. U.S. Steel Corporation*, 424 F.2d 331, 334 (1970), "... it becomes apparent that the primary role of the Commission is to seek elimination of unlawful employment practices by informal means leading to voluntary compliance with the Act."

It is obvious to this Court that Congressional intent may well be frustrated if those parties on behalf of whom the EEOC attempts to negotiate some conciliation are allowed to later come to district court in an attempt to litigate every disappointment that life has dealt them. Because of this perception, we cannot vacate our *Order* of October 18, 1984 as we are convinced, in light of the foregoing rationale, that said *Order* reflects the appropriate legal conclusion. Therefore, Plaintiff's claims pursuant to Counts I, II, and III of his amended complaint are limited to those allegedly discriminatory acts which P P & L has committed against him since January 20, 1982.

1. See Docket Item 29 at page 3.

## II

■ Count IV of Plaintiff's amended complaint alleges that PP & L retaliated against him in violation of the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 955(d). Since this state claim (and the other state claims we shall subsequently consider) arises out of the same nucleus of operative fact as federal claims Plaintiff is entitled to assert, we shall assume pendent jurisdiction over these state claims pursuant to the doctrine expressed in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The *Gibbs* Court stated:

> Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim "arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . .," and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case". The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. . . . The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole. *Gibbs*, supra at 725.

It remains for us to determine whether Plaintiff's state claims can survive Defendant's motion for summary judgment.

The Pennsylvania Human Relations Act (PHRA) explicitly provides that any charges filed pursuant to it must be brought within 90 days of the occurrence of the alleged unlawful discriminatory practice. See 43 Pa.C.S.A. § 959(g), as amended in 1982. Plaintiff's charges filed with the PHRC were filed on December 2, 1982.[2] This means simply that Pennsylvania Courts would not consider discriminatory conduct which occurred before September 2, 1982 in the context of this charge. See *Stringer v. Pennsylvania Dept. of Community Affairs, Bureau of Human Resources*, 446 F.Supp. 704 (1978). Thus, we also cannot consider acts committed more than 90 days prior to the Plaintiff's filing of charges with the PHRC. We find, therefore, that Plaintiff may utilize only those developments between himself and PP & L which occurred after September 2, 1982 in support of his claim under Count IV of his amended complaint. Pennsylvania law requires this result and state substantive law is controlling on pendent claims. See *Gibbs*, supra at 726.

■ As regards Counts V and VI, Defendant alleges that the former is time barred and the latter has been dropped by stipulation. That Count VI of the amended complaint is no longer a proper subject of this Court's consideration is indisputable.[3] As to whether Count V is time barred, we must consider the specific allegations therein. Count V states: "Defendant's highest levels of personnel and labor management attempted and succeeded to aid, compel or coerce others into the commission of unlawful and discriminatory acts against Plaintiff. . . ." Plaintiff then cites two specific examples of this type of behavior. Without going to great length, in light of the comment this Court has made above concerning the "90 day requirement" of the PHRA, it is sufficient to say that these alleged discriminatory acts—one on August 26, 1975 and one on August 11, 1982 [4]—are too remote in time to be asserted under a PHRA charge which wasn't filed until De-

---

2. See Docket Item 24 at last page of Exhibit "C".

3. We agree that Count VI is no longer viable since Plaintiff's counsel did stipulate that he was no longer asserting Count VI during a pretrial conference held on August 2, 1985.

4. The amended complaint cites August 11, *1984* as the date that PP & L succeeded in coercing

Harold Patience to solicit Plaintiff's signature pursuant to a plan to have him sign an "Affidavit of Recovery". However, it is clear that this is a typographical error since that date is listed in three other places in the record as August 11, *1982*.

cember 2, 1982. As we stated previously in our discussion of Count IV, if the Courts of Pennsylvania would not entertain these claims (which we are convinced is the case), we may not entertain them either. Accordingly, we find that Count V may not be maintained because the factual allegations in support of it were too remote from the date Plaintiff filed his PHRA charge as a matter of Pennsylvania law. See 43 Pa.C. S.A. § 959(g), as amended in 1982. Thus, we shall grant Defendant's summary judgment motion as to Count V.

### III

Counts VII and VIII concern Pennsylvania tort claims—the intentional infliction of emotional distress and tortious interference with contractual relations, respectively. Defendant's motion for summary judgment on these counts is based on the twin theories that neither states a cause of action under Pennsylvania Law nor can be heard by this Court due to the fact that federal law preempts Pennsylvania law in this area. Our review of the arguments persuades us that either of these arguments is sufficient to warrant a grant of summary judgment to the Defendant on Counts VII and VIII. We shall elaborate somewhat on the Defendant's preemption argument.

■■■ Plaintiff has filed grievances pursuant to the collective bargaining agreement his union has negotiated with Defendant PP & L in relation to the employment practices which caused him emotional distress and interfered with his contractual relations with his employer.[5] Federal labor policy favors grievance procedures established via collective bargaining agreements as the preferred means of dealing with disputes arising out of said agreements. See *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4

L.Ed.2d 1409 (1960). We agree, moreover, with Defendant's position that "[A]pplication of state law remedies and procedures to such disputes presents the risk of inconsistent adjudications, and in addition, undermines the arbitration process favored by federal law."[6] We do note, as did counsel for the Defendant,[7] that *Farmer v. Carpenters, Local 25*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) permits application of state tort law where there is an allegation of intentional infliction of emotional distress in a labor context only when two requirements can be met. First, the conduct alleged must be extreme and outrageous, distinct from the "type of robust language and clash of strong personalities that may be commonplace in various labor contexts." *Farmer*, supra at 306, 97 S.Ct. at 1066. Second, said conduct must be separate and apart from the employment decision in question. Applying the *Farmer* criteria to the case *sub judice*, we must conclude that this is not an appropriate situation in which to apply state law to a claim arising from a collective bargaining agreement. While the word "outrageous" brings us into the realm of semantics, we do have our misgivings as to whether the Defendant's alleged activities can be fairly characterized by that word after our review of Pennsylvania cases[8] which have grappled with it. However, outrageous or not, it is clear on the record that Plaintiff does not satisfy the second part of the *Farmer* test. Any conduct which any agent or employee of P P & L manifested toward Plaintiff which is noted in this case file clearly had to do with his status as an employee and whether he would continue to be an employee. Thus, we must conclude that Defendant's alleged acts against Plaintiff are inextricably intertwined with the collective bargaining agreement to which they were parties. In view of this

---

**5.** It seems axiomatic that a party to a contract may not be held liable for intentional interference with that contract. See *Raab v. Keystone Insurance Co.*, 271 Pa.Super. 185, 412 A.2d 638; *appeal dismissed* 496 Pa. 414, 437 A.2d 941 (1979).

**6.** See Docket Item 24 at page 30.

**7.** *Id.* at 31 and 32.

**8.** See, for example, *Mullen v. Suchko*, 279 Pa.Super. 499, 421 A.2d 310 (1980). See also, *Hooten v. Pennsylvania College of Optometry*, 601 F.Supp. 1151 (E.D.Pa.1984).

determination we are reluctant to hear Plaintiff's state claims as asserted in Counts VII and VIII.

 Plaintiff contends that the grievance mechanism to which he submitted the complaints he now asks this Court to resolve is a "... system that lacks integrity." See Docket Item 26 at page 8. This is presented, however, as a conclusory allegation which we cannot credit in the face of the sworn affidavit of Gary Saeger, PP & L's Labor Agreement Administrator. Mr. Saeger states unequivocally that "[T]he scheduling of arbitration of the grievances filed by Austin Peoples, Jr. has not been handled differently than grievances filed by white employees of PP & L." See Docket Item 34 at paragraph 14. In the face of such a sworn affidavit a Plaintiff may not rely on the naked allegations of his complaint.[9] See Rule 56(e) of the Federal Rules of Civil Procedure.

This is precisely what Plaintiff has done here and the result is that summary judgment as to Counts VII and VIII of his amended complaint shall be granted to Defendant PP & L. It has long been held that a party opposing a summary judgment motion may not withhold his evidence until time of trial. See *Standard Dredging Corp. v. Inter-American Center Authority,* 351 F.2d 470 (5 Cir.1965). Since Plaintiff has come forward with no evidence which would persuade this Court that the grievance mechanism he wishes to bypass, in derogation of one of the fundamental tenets of federal labor policy, is futile as to him, we will not apply the law of Pennsylvania and will instead direct that he go through the grievance process.

## IV

It seems appropriate to synthesize our findings. They follow, along with our *Order* that:

(A) Counts I, II, and III of Plaintiff's amended complaint survive but are restricted to those discriminatory acts De-

fendant may have committed against Plaintiff since January 20, 1982.

(B) Count IV survives but this Court will limit its inquiry in relation thereto to those retaliatory acts Defendant may have committed toward Plaintiff since September 2, 1982.

(C) Defendant is granted summary judgment as to the claims made in Counts V and VI.

(D) Defendant is granted summary judgment as to Counts VII and VIII.

(E) Count IX survives as Defendant has made no effort to summarily dispose of it.

IT IS HEREBY ORDERED that trial of this matter will be restricted in keeping with the above determinations.

---

9. In the amended complaint the attached affidavit of the Plaintiff states that "... my understanding as of this date is that reliance upon the grievance mechanism to resolve my employment conflicts is futile."